Argued and submitted September 12, 1988, affirmed February 8, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# GENE FOSTER,
*Appellant.*

## (86-61472; CA A48063)

768 P2d 416

Edmund J. Spinney, Eugene, argued the cause and filed the brief for appellant.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants. ORS 813.010. His only contention is that the court erred by denying his motion to suppress evidence obtained after his vehicle was stopped by a police officer. He divides his argument on this assignment into three categories: (1) the officer did not have reasonable suspicion under ORS 131.615 to justify the stop; (2) the officer lacked probable cause to arrest him; (3) he was unconstitutionally denied the right to counsel before deciding whether to perform field sobriety tests. We affirm.

The trial court issued a written opinion with findings that defendant does not challenge and we summarize. At about 8:55 p.m. on Thanksgiving Day, the arresting officer saw defendant's vehicle parked on the shoulder of the road across from a tire shop. The officer turned his patrol car around and, as defendant drove away, followed him for about one mile. During that time, he saw defendant's vehicle weave from the fog line to the centerline of the roadway. He described the movement as a "slow motion weave." He also observed that the vehicle's speed varied from 20 miles per hour to 45 miles per hour and that the fluctuation in speed occurred several times during his observation.

After the officer stopped defendant's car, and while waiting for him to get his driver's license out of his wallet, the officer noticed that defendant's reflexes were slow and that he had difficulty removing the license. Defendant initially denied having had anything to drink but then admitted that he had drunk two or three "beers" during dinner. When defendant got out of his car, the officer noted that his eyes were glossy and bloodshot and that his head "bobbed around" when he moved.

The officer then advised defendant of his "*Kell* rights."[1] We recite the finding of the trial court as to what occurred:

"In talking with the defendant at the scene the trooper requested the defendant to perform field sobriety tests. The defendant initially refused to take the tests and kept saying

---

[1] *State v. Kell,* 303 Or 89, 734 P2d 334 (1987).

that he wanted to have an attorney present. The trooper advised him that if the field sobriety tests were not performed that he would be arrested."

The officer told defendant that it was impractical to have an attorney at the scene and that he would not allow defendant to go to his home or to a phone booth to call an attorney. Defendant completed the field sobriety tests.

■      Defendant first argues, in support of his motion, that the initial stop of his vehicle was unlawful, because the officer did not have a reasonable suspicion that he was driving under the influence of intoxicants. ORS 131.615. It follows, he argues, that the officer's observations, following the illegal stop, must be suppressed. The facts found by the trial court amply demonstrate an objective basis for the officer's belief that defendant was driving under the influence of intoxicants.

■      The second argument advanced by defendant is that, even if the stop was valid, there was not probable cause to arrest him for the charge. It is difficult to understand the purpose of this contention in relation to the motion to suppress the officer's observations of defendant's performance of the field sobriety tests. Defendant argues that he was arrested when the officer advised him of his "*Kell* rights" before he did the tests and, at that juncture, there was no probable cause for the arrest. It follows, he seems to contend, that the tests were conducted after an unlawful arrest and must be suppressed. The officer testified that he arrested defendant after the field tests. The problem that defendant had with dexterity and balance, which the officer observed, while doing the tests, in conjunction with what he had already observed gave him ample probable cause for the arrest. The arrest occurred after defendant had completed the tests and could not have been a ground for suppression.

■      Defendant's final contention is that he consented to take the field sobriety tests after the officer denied him his constitutional right to counsel. His argument is based solely on Article I, section 11, of the Oregon Constitution and he does not cite or argue any statutory or federal constitutional provision.

Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

Defendant's argument is based on *State v. Spencer,* 305 Or 59, 750 P2d 147 (1988), where the court, applying Article I, section 11, considered the scope of "criminal prosecution" in the context of the defendant's request to consult an attorney before deciding whether to take a breathalyzer test. ORS 813.100. For the purpose of the right to counsel under Article I, section 11, and the federal counterpart under the Sixth Amendment, a criminal prosecution had previously been said to have begun only when a defendant was formally charged with a crime. *See State v. Newton,* 291 Or 788, 636 P2d 393 (1981); *Kirby v. Illinois,* 406 US 682, 92 S Ct 1877, 32 L Ed 2d 411 (1972). *Spencer* determined that a criminal prosecution, at least for Oregon constitutional purposes, could begin earlier than the making of a formal charge.

"A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that the arrested person is, in that moment, ensnared in a 'criminal prosecution.' " 305 Or at 74.

That generalized discussion was followed by the actual holding of the court that, under Article I, section 11,

"an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." 305 Or at 74.

The court, in *dicta,* replaced the term "formal charge" with "formal custody" to describe a point at which criminal prosecution begins. The term "custody" has many connotations in criminal law. It can be when a reasonable person would not feel free to leave the presence of a police officer. *See, e.g., State v. Roberti,* 293 Or 59, 644 P2d 1104; *rehearing allowed, former opinion withdrawn* 293 Or 236, 646 P2d 1341 (1982), *remanded* 468 US 1205, 104 S Ct 3574, 82 L Ed 2d 873, *former opinion withdrawn* 298 Or 412, 693 P2d 27 (1984). In that situation, the person may or may not be under arrest. In *Spencer,* the court appears to differentiate types of custody by equating "formal custody" with "formal arrest."

Although·a person who is detained before arrest while the police gather evidence is, in some measure, "ensnared in a 'criminal prosecution,'" the process has not been formalized by an arrest. Something else must be done before the encounter becomes "formal custody." The Supreme Court appeared to draw a line, however dim and uncertain it may be, at custody associated with an arrest on a charge.

Defendant agrees that the officer did not expressly arrest him until after he had completed the field sobriety tests, but he argues that the officer had probable cause to arrest him earlier and, in fact, threatened to arrest him, even if he did not take the tests. He contends, from those premises, that he was sufficiently in formal custody, that his Article I, section 11, right to counsel attached and that his request had to be honored before he had to decide whether to take the tests. We conclude that the point that defendant identifies is outside the lines drawn by the Supreme Court. The right to counsel that he claims did not attach when the officer requested that he take the tests.

■ ■   As part of his final contention, defendant suggests that he was coerced into taking the test, because the officer threatened to arrest him if he did not. He concedes that an officer's threat to do what the law entitles him to do is not constitutionally prohibited coercion. *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), *cert den* 406 US 974 (1972); *State v. Campbell,* 43 Or App 979, 607 P2d 745 (1979); *State v. Bopp,* 16 Or App 604, 519 P2d 1277 (1974). He argues, however, that that threat, coupled with the denial of counsel, made his participation in the test unconstitutionally coerced. He cites Article I, section 12, of the Oregon Constitution, which addresses the right to be free from compelled testimony. He suggests that that provision should be read to prohibit compelled furnishing of evidence and, because the officer compelled him to give evidence against himself by coercing him to display the extent of his physical dexterity and balance in doing the sobriety tests, that evidence should be suppressed. The field sobriety tests are not subject to the proscription against compelled self-incrimination. *See State v. Wells,* 58 Or App 617, 650 P2d 117 (1982), *rev den* 295 Or 446 (1983); *State v. Medenbach,* 48 Or App 133, 616 P2d 543 (1980).

Affirmed.