Argued and submitted November 21, 1991, affirmed February 12, 1992

# STATE OF OREGON,
## *Respondent,*

### *v.*

# MARTIN DAVID SCOTT,
## *Appellant.*

# (90CR-538; CA A67883)

826 P2d 71

Steven V. Humber, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his convictions for driving while suspended, ORS 811.182, and driving while under the influence of intoxicants. ORS 813.010. He seeks suppression of his refusal to take a breath test and his performance on various field sobriety tests.

The facts are undisputed. State police officer Mazour stopped defendant's vehicle for a traffic infraction. When he approached defendant, who was driving, Mazour smelled a strong odor of alcohol and noted that defendant "was visibly intoxicated." Defendant said that he had consumed "about three beers." He could not provide a valid driver's license. The dispatcher ran a check and reported that defendant's status was "felony suspended for DUII." Mazour informed defendant that he was under arrest for driving while suspended, advised him of his *Miranda* rights and transported him to jail.

After arriving at the jail, Mazour provided what he characterized as a "short version" of the following statement:[1]

> "I am now going to request you to perform field sobriety tests. If you refuse or fail to submit to the field sobriety tests, evidence of the refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of the allegations that you were driving under the influence of intoxicants."

*See* ORS 813.136. Mazour then administered several field sobriety tests, including a one-leg stand while counting to 30, the alphabet, counting backwards and a walk and turn test. He also asked defendant to rate his level of intoxication on a scale of 1-10. Defendant rated himself a "3." Thereafter, Mazour read defendant the information contained on a Motor Vehicles Division "rights and consequences" form[2] and asked him to take an Intoxilyzer test. Defendant refused.

---

[1] Defendant does not challenge the sufficiency of Mazour's advice regarding the consequences of field sobriety test refusal or failure.

[2] The form provides, in part:

"You are about to be asked to take a breath test to determine the alcohol content of your blood.

"(a) Driving under the influence of intoxicants is a crime in Oregon. You are subject to criminal penalties if the test or other evidence shows that you are

Before trial, defendant moved to suppress all evidence relating to the field sobriety tests and his refusal to submit to the Intoxilyzer test. The motion was denied.

■     Defendant argues that his refusal to take the Intoxilyzer test was inadmissible in the light of ORS 813.100(1):

> "Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath for the purpose of determining the alcoholic content of the person's blood *if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010* or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130." (Emphasis supplied.)

Defendant points to the fact that he was placed under arrest and transported to jail for the offense of driving while suspended, not for DUII.

By the time defendant was asked to take the Intoxilyzer test, he had performed a series of sobriety tests, had been advised that DUII was a crime and had been advised that, if he refused to submit to the breath test, or failed it, evidence of his refusal or failure would be admissible against him. We agree with the trial court that that advice, especially when given after defendant had performed field sobriety tests, was sufficient to inform him that he was in custody for DUII, as well as for driving while suspended. Also, by the time that defendant was asked to take the Intoxilyzer test, the officer had probable cause to arrest him for DUII, and he

under the influence of intoxicants. If you refuse or fail the test, evidence of the refusal or failure may also be offered against you.

"(b) You will fail the test if it shows that your blood alcohol level is .08 percent or higher (if you are 18 years of age or older) or a blood content in any amount (if you are under 18 years of age).

"* * * * *

"WILL YOU TAKE A BREATH TEST TO DETERMINE THE ALCOHOL CONTENT OF YOUR BLOOD?"

was under "constructive restraint" for that offense. ORS 133.005(1).[3] The requirements of ORS 813.100(1) were met.

■      Defendant also argues that his performance on the field sobriety tests must be suppressed, because they were "communicative statements" that were given involuntarily. He contends that the involuntariness arose out of the fact that he "was given no choice but to refuse the field sobriety tests and have that refusal * * * used against him or to submit to [the] tests."

In *State v. Green*, 68 Or App 518, 522, 684 P2d 575, *rev den* 297 Or 601 (1984), we held that, under the law as it then existed, a defendant's *refusal* to perform field sobriety tests was communicative or "testimonial."[4] On the other hand, we have held that *performance* of field sobriety tests is "not subject to the proscription against compelled self-incrimination," *State v. Foster*, 95 Or App 144, 149, 768 P2d 416 (1989), because performance is "not an act of communication." *State v. Wells*, 58 Or App 617, 621, 650 P2d 117 (1982), *rev den* 295 Or 446 (1983). The tests performed by defendant in this case were non-testimonial and are not subject to attack on the ground that they violated defendant's "right to remain silent." The Implied Consent Law, which the legislature has extended to field sobriety tests, *see* n 4, *supra*, has the effect of *requiring* an individual to consent to the tests, *see State v. Spencer*, 305 Or 59, 71, 750 P2d 147 (1988), and the statutory requirement that a defendant submit to sobriety tests or have the refusal used against him, ORS 813.135 - ORS 813.136, "is intended to be coercive, not

---

[3] ORS 133.005(1) provides, in part:

" 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense."

Under certain circumstances, a defendant may be deemed to be "under arrest," even though the officer did not "articulate to the arrestee that this is the crime for which he is being arrested * * *." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986); *see also State v. Groda*, 285 Or 321, 325, 591 P2d 1354 (1979).

[4] After we decided *Green*, the legislature enacted ORS 813.135 and ORS 813.136, Or Laws 1989, ch 576, §§ 14, 15, which created the requirement that drivers take field sobriety tests and extended to those tests the doctrine of implied consent, which was already the basis for admitting Intoxilizer (or "breathalyzer") test results. *See State v. Green, supra*, 68 Or App at 524.

protective." *State v. Nguyen*, 107 Or App 716, 720, 813 P2d 569, *rev den* 312 Or 528 (1991).

■      On the other hand, the officer's request that defendant rate his level of intoxication on a scale of 1-10 cannot properly be characterized as a field sobriety test. *See* ORS 801.272; OAR 257-25-020. Rather, it is an example of interrogation that seeks testimony on the central issue in the case. Defendant was asked to provide an answer to the officer's question after having been read his *Miranda* rights. He had also been told that refusal to submit to field sobriety tests would be used against him. Defendant could have believed that refusing to rate his level of intoxication would constitute a refusal to submit to appropriate tests. That was not the case.

■      Defendant's response to the question about his level of intoxication should have been suppressed. However, we conclude that the trial court's failure to suppress defendant's self-rating was harmless beyond a reasonable doubt, given the rest of the evidence presented in defendant's trial to the court on stipulated facts.

Affirmed.