Argued and submitted October 30, 1991, reversed and remanded July 22, 1992

# STATE OF OREGON,
*Appellant,*

*v.*

# TERRY KAY SCHAFFER,
*Respondent.*

(903240; CA A68662)

835 P2d 134

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Bruce M. Howlett, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

## DEITS, J.

Defendant was charged with driving under the influence of intoxicants. ORS 813.010. The state appeals from the trial court's pretrial order suppressing statements that defendant made after a police officer requested her to perform field sobriety tests and suppressing evidence of car keys found in defendant's purse during the stop. We reverse and remand.

On August 31, 1990, at about 10 p.m., Lincoln County Sheriff Calef investigated a one-car accident. The person reporting the accident said that the driver was a woman about 40 to 45 years old and that the accident appeared to be alcohol-related. Calef found the car in an isolated area on a rural road. The car was partially blocking the road, the headlights were on and the door was open. Calef turned on his car's overhead lights and saw defendant, the only person in the area, walking on a nearby driveway toward a house. He called out to her, identifying himself as a police officer. As he began to approach her, she quickened her pace away from him in a manner that the trial court characterized as evasive. Calef noted that she matched the reported description of the driver, that she was staggering as if she were intoxicated and that she smelled of alcohol.

Defendant was uncooperative and denied that she had been the driver. Calef put his hand on her to "escort" her back to the car. She had difficulty walking and maintaining her balance. Three other police officers came to the scene, but one left shortly thereafter. They had little or no part in the investigation. The informant returned to the scene and told Calef that he had not seen anyone inside the car, but that he had seen defendant come out from the driver's side. Defendant's boyfriend also came to the scene during the investigation.

Defendant claimed that another woman had been driving. However, she would not say where the woman was. When told that there were footprints in the gravel only on the driver's side of the car, defendant acknowledged that she got out of the car on the driver's side but continued to deny that she had been driving. Because the tow truck driver needed the keys to the car, Calef asked defendant if she had them. She began looking in her purse and said that both she and the

other woman had keys. When she could not find the keys, Calef asked if he could look in her purse. She did not object, and he found them in her purse while she watched.

Calef asked defendant to perform some field sobriety tests and told her that, if she refused to do them, evidence of her refusal could be admissible in a trial. She had difficulty performing the tests. Calef then arrested her. At that time, he advised her of her *Miranda* rights. Approximately 55 minutes had passed since Calef first arrived at the scene.

The trial court found that Calef had reasonable suspicion sufficient to stop defendant and that the 55 minutes that passed between the stop and arrest were reasonable under the circumstances. It also found that, on the basis of the informant's identification of defendant, there was probable cause to arrest her and that the warrantless arrest was lawful. However, concluding that *Miranda* warnings were required, as a matter of law, before an officer requests a defendant to perform field sobriety tests, the trial court suppressed the statements that defendant made after Calef asked her to perform the tests. Concluding that defendant did not voluntarily consent to the search, the court also suppressed the car keys that the deputy had found in her purse.

■ The state first assigns error to the trial court's holding that *Miranda* warnings should have been given before defendant was asked to perform field sobriety tests and to its suppression of the statements that defendant made after that request. The court held:

> "From the moment that an officer asks a suspect to perform sobriety tests, no answers to interrogation by the officer should be admissible unless the officer has first advised the person of the *Miranda* rights.
>
> "* * * * *
>
> "Under the United States Constitution and the Oregon Constitution, *Miranda* rights were required before any questioning of the Defendant from and after the point that [the deputy] asked the Defendant to perform field sobriety tests."

■ *Miranda* warnings are required under the Oregon Constitution[1] when a defendant is in "full custody" or in a

---

[1] Article I, section 12, provides, in part:

setting that is "compelling," even if it cannot be characterized as "full custody." *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990). Although decided before the compelling circumstances component of *Miranda* warnings was first articulated in *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987), we addressed the question of whether a request to perform field sobriety tests requires *Miranda* warnings in *State v. Gainer*, 70 Or App 199, 689 P2d 323 (1984). There, the defendant argued that a traffic stop in which she was being investigated for a possible DUII offense took on the characteristics of a criminal investigation when an officer asked her to perform some field sobriety tests. She contended that she should have been advised of her *Miranda* rights before the officer asked her to perform the tests. We held that *Miranda* warnings were not required in those circumstances.

Citing *Berkemer v. McCarty*, 468 US 420, 104 S Ct 3574, 82 L ED 2d 873 (1984), which had similar facts, we said:

> "Although the [United States Supreme] Court refused to except misdemeanor traffic offense investigations from the requirements of *Miranda*, it concluded that *Miranda* warnings need not be given incident to a stop, unless the suspect is 'subjected to restraints comparable to those associated with a formal arrest.' 468 US at [441], 82 L Ed 2d at 336. In determining whether the suspect is in custody, as so defined, the Court stressed that the only relevant inquiry is how a reasonable person in the suspect's position would have understood his situation * * *." 70 Or App at 202.

We also concluded that a routine traffic stop is not the equivalent of a formal arrest, even though a motorist is not "free to leave" and a motorist who tries to do so can be arrested for attempting to elude or for another offense. 70 Or App at 203; *see State v. Hackworth*, 69 Or App 358, 362, 685 P2d 480 (1984).

A request to perform field sobriety tests does not create inherently compelling circumstances for *Miranda* purposes, as a matter of law. *See State v. Scott*, 111 Or App 308, 312, 826 P2d 71 (1992). A request to perform field sobriety tests is made pursuant to Oregon's Implied Consent Law,

---

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

which includes protective procedures, such as informing persons of the consequences of refusing to take the test.[2] In view of those statutory provisions and the general circumstances of a request to perform the tests, we do not think that a request to perform the tests creates compelling circumstances.

There were no other facts here to make the circumstances compelling. Although she was about 30 feet from the car when the officer arrived, defendant admitted that the car was hers, that she knew the driver and that she was in the car at the time of the accident. It would be reasonable for her to expect to answer questions and remain until the accident was investigated, and the car could be removed from blocking the road. Although it was dark and few cars were in the area, the accident occurred in a public place close to a house and an airport. A passerby reported the accident and came to the scene during the investigation, as did defendant's boyfriend. The atmosphere was calm, and only one officer actively participated in the investigation. We hold that *Miranda* warnings were not necessary under Oregon or federal law before defendant was asked to perform field sobriety tests. The trial court erred in suppressing defendant's statements made during the time after Calef's request that she perform the tests and before her arrest.

■  The state next assigns error to the suppression of the car keys that Calef found while searching defendant's purse. The court found that the officer's recollection and description of that event was imprecise and that the defendant clearly did not want him to know whether she had the key to the car in her purse. It also found that

"[t]he fact that the [*Miranda*] rights had not been communicated to the Defendant point further away from a free and voluntary consent to the search."

---

[2] ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

The court held that the state "failed to produce clear and convincing evidence" that defendant consented to the search.

As the state argues, and defendant concedes, the trial court held the state to too high a burden of proof in concluding that it had failed to produce clear and convincing evidence of a lawful warrantless search. The state was only required to prove consent by a preponderance of the evidence.

Reversed and remanded.