Argued and submitted March 9, resubmitted In Banc October 14, reversed and remanded for new trial December 9, 1992, reconsideration denied March 17, petition for review allowed April 20, 1993 (316 Or 142)

STATE OF OREGON,
*Respondent,*

*v.*

THOMAS ELDRIDGE LAWRENCE,
*Appellant.*

(903896; CA A70304)

843 P2d 488

Jeffrey C. Hollen, Newport, argued the cause for appellant. With him on the brief was Richardson, Ouderkirk & Hollen, Newport.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He contends that the trial court erred by denying his motion to suppress the results of field sobriety tests and his responses to questions that the arresting officer asked after the officer stopped the tests. We reverse and remand.

Defendant was stopped for committing various traffic violations. When Officer Shawver approached defendant, he observed indicia of intoxication. He asked defendant to perform field sobriety tests and advised him that test failure or refusal to perform the tests could be used against him in court. ORS 813.136; *State v. Fish*, 115 Or App 609, 612-13, 839 P2d 278 (1992). Defendant agreed to take the tests.

The first test that Shawver had defendant perform was a horizontal gaze nystagmus test. Shawver then had defendant perform the Romberg standing test, which requires the driver to stand with feet together, arms at his sides, eyes closed and head tilted back. While defendant was in the Romberg position, Shawver asked him to recite the alphabet. Defendant did so "quickly and inaccurately" while swaying back and forth. Then, Shawver asked him to count backwards from 100 to 77. Defendant, still swaying, made several mistakes on the counting test. Shawver then had defendant perform a finger to nose test. Shawver felt that defendant had failed the field sobriety tests, and he told defendant that he was stopping them.

Shawver then asked defendant to rate his level of intoxication on a scale from 1 (sober) to 10 (intoxicated). Defendant answered, "2." Next, Shawver asked defendant if he could feel the effects of the alcohol that he had consumed. Defendant responded, "Some." Finally, Shawver asked defendant if his drinking had affected his driving and performance on the field sobriety tests. Defendant answered, "I'm only going to Newport." At that point, Shawver arrested him and advised him of his *Miranda* rights.

Defendant moved to suppress the results of the field sobriety tests and the statements that he made after the tests were concluded. The court denied the motion.

■ In defendant's first assignment of error he contends that the field sobriety test statutes, ORS 813.135 and ORS 813.136,[1] are unconstitutional. His argument is twofold: First, the statutes authorize a search, contrary to Article I, section 9, of the Oregon Constitution, and the Fourth Amendment; second, the statutes compel him to be a witness against himself in violation of Article I, section 12, and the Fifth Amendment. We address the constitutional challenges in that order and, in so doing, we consider state constitutional questions before federal questions. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

As to Article I, section 9, defendant asserts that an officer's request that a driver perform field sobriety tests and the officer's observation of those tests constitute a search. He then points to the fact that an officer needs only "reasonable suspicion"[2] of DUII before conducting the tests and concludes that the statutes impermissibly authorize a search based on less than probable cause.

■ Under Article I, section 9, a search occurs when governmental intrusion significantly impairs privacy rights. *State v. Wacker*, 111 Or App 483, 486, 826 P2d 1019 (1992). An officer does not make a forbidden intrusion into constitutionally protected privacy by asking a driver to perform field sobriety tests or by watching the driver perform them. *State v. Niles*, 74 Or App 383, 386, 703 P2d 1030 (1985). Although

---

[1] ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

[2] ORS 813.135 provides that, among other prerequisites, an officer must "reasonably suspect[]" that a motorist has committed the offense of DUII before field sobriety tests may be administered.

we decided *Niles* before the legislature enacted ORS 813.135, 1989 Or Laws, ch 576, § 15, the adoption of that statute does not alter our conclusion that the non-intrusive procedure of field sobriety tests does not constitute a search under Article I, section 9. Similarly, they do not violate any "legitimate expectation of privacy" that is protected by the Fourth Amendment. *See Illinois v. Andreas*, 463 US 765, 771, 103 S Ct 339, 77 L Ed 2d 1003 (1983); *Rakas v. Illinois*, 439 US 128, 143, 99 S Ct 421, 58 L Ed 2d 387 (1978). The driver's security is protected by requiring that the officer reasonably suspect that the driver is DUII before detaining him and conducting an investigation. *State v. Niles, supra,* 74 Or App at 387.

■    With respect to defendant's contention that ORS 813.135 and ORS 813.136 violate Article I, section 12, and the Fifth Amendment, that issue was recently resolved in *State v. Fish, supra,* where we held that those statutes are not contrary to Article I, section 12.[3] 115 Or App at 613-14. Accordingly, defendant's first two constitutional arguments fail under *Niles* and *Fish*.

■    In his second assignment of error, defendant contends that the court erred by denying his motion to suppress responses to questions that the arresting officer asked after he stopped the field sobriety tests. He argues that some type of "clear break" should be provided by police to distinguish field sobriety tests from subsequent investigatory questions, so that motorists do not believe that they are *required* to respond to the latter. We agree.

In *State v. Scott, supra,* the defendant had been arrested for driving while suspended, advised of his *Miranda* rights and transported to jail. At the jail, he was asked to perform field sobriety tests and was informed that a refusal would be used against him in court. After he had performed several tests, he was asked to rate his level of intoxication. We held that that question "sought testimony on the central issue in the case" and could not be properly characterized as a field sobriety test. 111 Or App at 313. We concluded that,

---

[3] Because the rights guaranteed by the Fifth Amendment are essentially the same as those protected by Article I, section 12, *State v. Green*, 68 Or App 518, 523 n 3, 684 P2d 575 (1984), the statutes are also constitutional under the federal constitution.

although at one point the defendant had been advised of his *Miranda* rights, he had later been

> "told that refusal to submit to field sobriety tests would be used against him. *Defendant could have believed that refusing to rate his level of intoxication would constitute a refusal to submit to appropriate tests. That was not the case.*" 111 Or App at 313.

Here, defendant was faced with an identical question regarding his level of intoxication. His answer should have been suppressed. *State v. Scott, supra.*

■ ■ The questions regarding whether defendant could "feel the effects" of what he had been drinking and whether his drinking had "had an effect" on his driving and test performance are also questions that were likely to elicit self-incriminating testimonial evidence. They were not field sobriety tests. *See* ORS 801.272; OAR 257-25-020.[4] We do not agree with defendant that, when a motorist is advised of the consequences of refusing to perform field sobriety tests, he must also be told that he "has the right to remain silent." However, we do agree that, once the tests have concluded, the setting becomes "compelling" under the standard enunciated in *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990),[5] and the officer must give *Miranda*-like warnings before asking more questions. Because Shawver failed to give those warnings to defendant, the court should have suppressed the statements that defendant made after Shawver stopped the tests. Or Const, Art I, § 12.

■ The court erred in denying defendant's motion to suppress his responses to the post-field sobriety tests questions. Although the trial court properly admitted substantial

---

[4] ORS 801.272 provides:

" 'Field sobriety test' means a physical or mental test, approved by the Department of State Police by rule after consultation with the Board on Public Safety Standards and Training, that enables a police officer or trier of fact to screen for or detect probable impairment from intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance."

OAR 257-25-020 lists the approved tests.

[5] In *State v. Smith, supra,* the Supreme Court stated that *Miranda*-like warnings may be required "in circumstances that, although they do not rise to the level of full custody, create a 'setting which judges would and officers should recognize to be "compelling," ' " *quoting State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987).

evidence of defendant's guilt, we cannot say that there was little, if any, likelihood that the evidential errors affected the verdict. Or Const, Art VII (amended), § 3; *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991). Neither can we say that the state has proved beyond a reasonable doubt that the errors did not contribute to the verdict. US Const, Amend V; *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967). Defendant is entitled to a new trial.[6]

Reversed and remanded for a new trial.

---

[6] Defendant also challenges the admission of his response to a question by the officer about his educational background. Given our reversal of the conviction, we need not reach that issue.