Argued and submitted December 30, 1992, reversed and remanded April 21, 1993

# STATE OF OREGON,
*Appellant,*

*v.*

# JACK EDWARD HARRISON,
*Respondent.*

(90-60806; CA A74334)

851 P2d 611

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James N. Varner, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant is charged with driving under the influence of intoxicants. ORS 813.010. The state appeals a pretrial order that suppressed all of defendant's responses made after he was given the advice mandated by ORS 813.135[1] regarding field sobriety tests. ORS 138.060(3). We reverse.

In lieu of testimony by witnesses, the parties stipulated that the court could listen to a recording made by Trooper Zerzan at the time he contacted defendant. Zerzan approached defendant's parked car after he saw defendant slumped behind the steering wheel. After informing defendant that their conversation was being recorded, Zerzan asked how long defendant had been there, how much he had had to drink, and whether he had been drinking in his car. Zerzan then advised defendant of his *Miranda* rights. Defendant said that he understood those rights. After being asked some preliminary questions, defendant was asked to do some field sobriety tests. Before the tests, Zerzan told him, "I need to tell you that if you refuse to perform sobriety tests, the fact that you refused can be admitted against you in a court of law." When asked if he understood, defendant said that he did.

Defendant performed several sobriety tests. Throughout the tests, Zerzan asked a variety of questions. During the horizontal gaze nystagmus (HGN) test, the following conversation took place:

"Officer:   You came over to pick some people up?

---

[1] ORS 813.135 provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

"Defendant:   (No audible response).

"Officer:   Where were you going to pick them up from?

"Defendant:   Right here.

"Officer:   Which house?

"Defendant:   I dunno. I just park right here and they said I'll be waiting here for you.

"Officer:   Do you know where you're at?

"Defendant:   Yep. Right's there [*sic*] is River Road; right there is, uh, whatever road that is, and right there is a 76 gas station, 7-Eleven, (unintelligible)."

Before asking defendant to stand on one foot and count to 30, Zerzan asked defendant if he had any balance problems. Defendant replied that he did not. After defendant attempted to complete the counting test, Zerzan asked defendant how he thought he did on the test. Defendant said, "I guess not too good."

The next test that defendant performed was reciting the alphabet. Before instructing defendant on how to perform the test, Zerzan asked what level of education defendant had and whether he knew his "ABC's." Defendant answered that he graduated from high school, and that he knew his "ABC's." After instructing defendant on how to stand, the following conversation took place:

"Officer:   Who is the person that ran out of your car?

"Defendant:   My brother-in-law.

"Officer:   Where'd he go?

"Defendant:   I don't know where he went, I tell you. His mom lives right around the corner here somewhere. Me and his mom don't get along."

After accurately reciting his alphabet, defendant was asked how he thought he did on the test. He replied that he thought he did "good."

Defendant was asked to perform the heel-toe walking test. Zerzan asked defendant how he thought he did, and defendant replied, "I did nine steps. Nine steps up, back." Zerzan asked defendant to count backwards from 104 to 85. Defendant made some mistakes on this test, but when asked how he thought he did, he replied "pretty good." Following

the "counting" test, Zerzan asked defendant to rate his level of intoxication on a scale from 1 (sober) to 10 (intoxicated). Defendant said, "1." Next, Zerzan asked if defendant thought he should have been driving. Defendant answered, "No, I wasn't drunk. I still ain't drunk. I ain't — no. I got a little buzz, I do, * * *. I got a little buzz, but I — no." Next, Zerzan asked defendant if he could feel the effects of the alcohol he had consumed. Defendant said, "Yeah, I can." Finally, Zerzan asked whether defendant thought he was driving under the influence of intoxicants, and defendant said that he was not. At that point, Zerzan placed defendant under arrest. Defendant was also asked questions and gave responses after he was arrested.

Defendant moved to suppress his responses on the basis that they were given involuntarily. He argues that the questions were so interspersed with the sobriety tests that he could have believed that his refusal to answer questions could have been viewed as a refusal to take the tests. The trial court ruled, under *State v. Scott*, 111 Or App 308, 826 P2d 71 (1992), that all statements made by defendant after he was advised of the consequences of refusing to perform the field sobriety tests were suppressed.

In *State v. Scott, supra*, the defendant was advised of his *Miranda* rights before he was told that the "refusal to submit to field sobriety tests would be used against him." After performing some sobriety tests, he was asked to rate his level of intoxication. We held that, because the nature of the question concerned the "central issue" of the case, and because it was asked after the defendant was warned of the consequences of failing to submit to sobriety tests, the defendant could have believed that his failure to answer the question could constitute a refusal. 111 Or App at 313.

We considered a similar issue in *State v. Lawrence*, 117 Or App 99, 843 P2d 488 (1992). In that case, the defendant was not advised of his *Miranda* rights until after the field sobriety tests had concluded, and after he had answered some questions. We said that "some type of 'clear break' should be provided by police to distinguish field sobriety tests from subsequent investigatory questions, so that motorists do not believe they are *required* to respond to the latter." 117 Or App at 103. (Emphasis in original.)

■ In this case, the questions asked during the HGN test concerning who defendant was meeting and whether defendant knew where he was, are not of a nature that could reasonably be confused with questions related to a sobriety test. Because of that fact and because defendant had waived his *Miranda* rights, his answers should not have been suppressed. Likewise, the questions about balance problems and level of education were preliminary questions to help determine defendant's ability to perform certain tests and, therefore, were improperly suppressed. Similarly, Zerzan's questions about who ran out of the car and where that person went, were asked to gather information, and defendant could not have reasonably believed that he was being tested when asked such questions. The trial court erred in suppressing these responses.

■ The questions during the tests asking defendant how he thought he did on each test are similar to the request that defendant rank his level of intoxication, and defendant could have believed that the questions were part of the tests. Because there was no clear break between the last sobriety test and the questions asked immediately thereafter, defendant's answers must be suppressed if he could be confused about whether the questions were part of the sobriety test. We hold that the questions asked fall within that characterization. Defendant was asked to rate his level of intoxication and for his opinions on whether he thought he should have been driving, whether he felt effects of alcohol, and whether he thought he was driving under the influence. Those questions are so closely connected to the subject matter of the tests that defendant could have reasonably believed that these questions were testing his sobriety. The trial court did not err in suppressing the answers to these questions.

■ The last set of questions are those asked after defendant was arrested. Because there was a "clear break" from the tests before these questions were asked, defendant could not have reasonably believed that they were related to the sobriety tests. Defendant knew that he had a right to remain silent. By answering the questions, he voluntarily waived his *Miranda* rights and his responses are therefore admissible.

Reversed and remanded.