Argued and submitted February 5, reversed and remanded July 14, 1993

# STATE OF OREGON,
*Appellant,*

*v.*

# JOHN JOSEPH WHITEHEAD,
*Respondent.*

(92-60139; CA A76191)

855 P2d 1149

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Richard L. Fredericks and Thorp, Dennett, Purdy, Golden & Jewett, P.C., filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant was charged with driving under the influence of intoxicants (DUII). ORS 813.010. The state appeals a pretrial order suppressing statements made by defendant during the field sobriety tests. We reverse and remand.

At 1:40 a.m. on January 23, 1992, defendant was lawfully stopped by officer Zerzan. During that encounter, Zerzan reasonably suspected that defendant had committed the crime of DUII. Zerzan provided defendant with the warnings required by Oregon's Implied Consent Law, ORS 813.135[1] and 813.136,[2] and gave "Miranda" warnings. He asked defendant how much he had had to drink and defendant responded, "Uh, total tonight, I had probably four beers, and it was—it was 3 1/2—3 1/2 to 5 hours ago." Zerzan then identified the field sobriety tests that he was going to have defendant perform.

Zerzan asked defendant if he had any physical problems that would prevent him from performing the tests, and if his shoes affected his balance. Defendant responded that he had a middle-ear infection but that it should not affect his ability to do a "walk and turn." After having defendant stand on one leg while counting from 1001 to 1030, Zerzan asked defendant, "How do you think you did on that one?" Before having defendant recite the alphabet, Zerzan asked defendant, "How far did you go in school?" After defendant had recited the alphabet, Zerzan asked defendant, "How do you think you did on that one?" After explaining the heel to toe

---

[1] ORS 813.135 provides:

"Any person who operates a motor vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving under the influence of intoxicants in violation of 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the test shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

[2] ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

walk and turn test, Zerzan asked defendant, "Do you understand that?" After the heel to toe walk and turn test, Zerzan asked defendant, "Okay, how did you think you did on that one?" Zerzan then asked defendant to rate his sobriety on a scale from 1 to 10 and whether defendant thought that what he had had to drink affected his ability to drive.

■   The state argues that the trial court erred in suppressing all of defendant's answers to the officer's questions after the officer informed him of the consequences of refusing to perform field sobriety tests. The court suppressed the statements solely on the basis of our decision in *State v. Scott*, 111 Or App 308, 826 P2d 71 (1992). Orally, it held:

> "[T]he way I read *Scott* as written — and I want to make it clear I don't find any constitutional language that the officer in any way came close to violating or even threatening, — and I'm not aware of any statutory problem that the officer may have gotten into but purely because of *State versus Scott's* language, I would find that the, and conclude, that the statements made during field sobriety tests by way of response to officer question or officer comment needs to be suppressed. Any purely voluntary statement by the defendant would not be suppressed. Obviously there could be a dispute as to which statements are or are not voluntary and that may mean — volunteered — and that might mean additional testimony or evidence, but if any purely volunteered statement could be identified it would not be suppressed. Put it that way and then questions or-or responses to officer's questions or comments are suppressed under *Scott*. Not under the constitution of the state or the federal constitution, not under any statutory provision, but purely and simply under *Scott*."

The court's written order stated:

> "All statements made by [defendant] during the field sobriety tests which were made in response to questions asked by the trooper should be suppressed for the reasons explained in *State v. Scott*, [*supra*]."

Since our decision in *Scott*, we have addressed the issue of the suppression of statements made during field sobriety tests in *State v. Lawrence*, 117 Or App 99, 843 P2d 488 (1992), *rev allowed* 316 Or 142 (1993), and *State v. Harrison*, 119 Or App 391, 851 P2d 611 (1993). As the state points out, the facts here are virtually the same as those in

*Harrison*. There, we held that the officer's questions during the tests as to whether the defendant had any problems with balance and regarding the level of the defendant's education were questions that assisted the officer in determining the defendant's ability to perform certain tests. The responses to those questions should not have been suppressed. However, we held that the defendant's answers to questions as to the level of intoxication, whether he felt the effects of alcohol and if he thought that he was driving under the influence had to be suppressed.

■     As in *Harrison*, we reverse and remand. However, on remand the court must determine what statements should be suppressed by considering the circumstances of this case. The trial court's order demonstrates that it concluded that *Scott*, in and of itself, created a rule out of whole cloth that applies automatically to any and all statements made during field sobriety tests. However, as was made clear in *Scott*, the analytical principle underlying the decision is the constitutional proscription against compelled self-incrimination.

■■     In general, a driver's performance of field tests are merely demonstrative and do not violate the driver's rights under Article I, section 12, or the Fifth Amendment. *State v. Scott, supra,* 111 Or App at 312; *State v. Foster,* 95 Or App 144, 149, 768 P2d 416 (1989); *State v. Wells,* 58 Or App 617, 621, 650 P2d 117 (1982), *rev den* 295 Or 446 (1983). Verbal field sobriety tests do not necessarily compel incriminating testimony, because a test that only demonstrates a person's manner of speech produces physical evidence and does not constitute a testimonial act. *Pennsylvania v. Muniz,* 496 US 582, 592, 110 S Ct 2638, 110 L Ed 2d 528, 546 (1990); *State v. Medenbach,* 48 Or App 133, 138, 616 P2d 543 (1980). The key inquiry is whether the *content* of a defendant's compelled statements is incriminating. *State v. Knoch,* 86 Or App 15, 19, 738 P2d 979 (1987).

In *Pennsylvania v. Muniz, supra,* the United States Supreme Court examined the testimonial nature of a statement that a DUII suspect made while performing sobriety tests.[3] Muniz had been arrested for driving while intoxicated,

---

[3] Analyses under analogous provisions in the United States Constitution may be persuasive, but they do not bind us when we interpret the Oregon Constitution.

but he was not given "Miranda" warnings. At the police station, an officer asked him some questions and asked him to repeat three sobriety tests that he had performed during the roadside stop. The proceedings were videotaped and were admitted in evidence at his trial. One of the questions was, "When you turned six years old, do you remember what the date was?" Muniz answered, "No, I don't." 496 US at 586.

Muniz's speech was slurred when he answered the questions, and the Court agreed that

"Muniz's answers [were] not rendered inadmissible by Miranda merely because the slurred nature of his speech was incriminating." 496 US at 590.

However, the Court observed that "the trier of fact could infer from Muniz's answer (that he did not *know* the proper date) that his mental state was confused." 496 US at 592. (Emphasis in original.) In other words, the content of his answer enabled the trier of fact to infer that he was intoxicated.

The Court emphasized the difference between testimonial and non-testimonial evidence and said:

"The correct question for present purposes is *whether the incriminating inference* of mental confusion *is drawn from a testimonial act* or from physical evidence." 496 US at 593. (Emphasis supplied.)

The content of Muniz's answer revealed that he did not know the month and year of his sixth birthday. His statement was testimonial, because it contained a factual assertion. The Court explained that

"the incriminating inference of impaired mental faculties stemmed, not just from the fact that Muniz slurred his response, but also from a testimonial aspect of that response." 496 US at 599.

The Court concluded that his answer was incriminating, that it was testimonial, that it was compelled and that it should have been suppressed.

*See State v. Isom*, 306 Or 587, 761 P2d 524 (1988); *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982).

The lesson from *Muniz* is that, when the content of a compelled statement permits an incriminating inference, the declarant has been compelled to be a witness against himself. What statements permit those inferences depend on the facts of each case.

Reversed and remanded.