Argued and submitted April 12, 1993, reversed and remanded March 16, 1994

## STATE OF OREGON,
*Appellant,*

*v.*

## CHARLES LUTHER DILL,
*Respondent.*

(62985; CA A76056)

870 P2d 851

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

DEITS, P. J.

Durham, J. pro tempore, dissenting.

## DEITS, P. J.

■ Defendant was charged with driving under the influence of intoxicants (DUII). ORS 813.010. The state appeals the trial court's order suppressing defendant's responses to questions asked after the completion of field sobriety tests. We reverse and remand.

During a lawful traffic stop, Officer Wilcox reasonably suspected that defendant had committed the offense of DUII. After advising defendant that their conversation was being recorded, she informed him of his *Miranda* rights and requested that he perform certain field sobriety tests. She told him the specific field sobriety tests that she wanted him to perform and advised him of the consequences of refusing to take the tests:[1]

> "I'm going to ask you to do some field sobriety tests, that's going to consist of some balance things, I'm going to have you recite the alphabet, I'm going to have you count backwards, and possibly a finger-to-nose test. And if you refuse to take those tests, that could be used against you in court."

She also asked him about his drinking that night. Defendant said that he had consumed three 16-ounce glasses of beer while at the coast. Wilcox also asked defendant whether he had any medical or hearing problems. Defendant said that he did not have any medical problems, but had some hearing loss in both ears from working in a steel mill. Defendant does not challenge the admissibility of any of these statements.

---

[1] ORS 813.135 provides:

"Any person who operates a motor vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

Following that exchange, Wilcox administered the first field sobriety test, the horizontal gaze nystagmus (HGN) test. She confirmed that defendant knew the alphabet and that his boots were comfortable. Wilcox then asked defendant to stand with his arms at his side, with his head tilted backwards, and to recite the alphabet. He did so. Next, she told him to lift his head and count backwards from 95 to 85, which he did. She then asked him to lift one leg six-inches off the ground and count from 1001 to 1030. Defendant had difficulty performing this test. She also asked him to walk nine steps forward, turn around and walk nine steps back, heel-to-toe. He had some trouble, but apparently eventually was able to do this. She then asked him to close his eyes and tell her when 30 seconds had passed. Finally, she told him "what I want you to do is one more test, *this is the last one*," (emphasis supplied), and she asked him to perform the finger-to-nose test.

After defendant had completed the finger-to-nose test, Wilcox then said "let me ask you a question." She asked defendant to rank his level of intoxication on a scale of zero to 10 — "zero is stone-cold sober, and 10 is falling down drunk." She also asked him whether he felt the effects of the alcohol and whether he thought that the alcohol had affected his driving. Defendant ranked his level of intoxication at three and said that he felt that he was affected by the alcohol "a little bit" and that the alcohol might have affected his driving. Wilcox then arrested defendant for DUII.

At trial, defendant moved to suppress evidence of his answers to the last three questions asked by the officer on the ground that his responses were compelled in violation of his constitutional right against self-incrimination, because he believed that those questions were part of the field sobriety tests and that a refusal to answer them would be admissible against him in court. The trial court granted defendant's motion on the basis of our holding in *State v. Scott*, 111 Or App 308, 826 P2d 71 (1992).

In *Scott*, the defendant was stopped for a traffic infraction. When the officer discovered that the defendant's license was suspended, he was arrested for driving while suspended. He was advised of his *Miranda* rights and taken to jail. At the jail, the defendant was advised that he was going to

be asked to perform field sobriety tests. However, he was not told which tests he was going to be asked to do. At that time, he was informed of the consequences of his refusal to perform field sobriety tests. After the defendant had performed a number of field sobriety tests, and without any indication that the tests were over, the officer asked him to rank his level of intoxication. We held that that question could not be characterized as a field sobriety test. Rather, the question sought an answer on a central issue in the case. We concluded that under the particular circumstances, the defendant may have thought that his failure to answer the question could constitute a refusal to submit to the field sobriety tests and, therefore, his answer was potentially compelled and should have been suppressed. However, we held that in view of all the evidence in the case, the trial court's failure to suppress that statement was harmless error.

In *State v. Lawrence*, 117 Or App 99, 843 P2d 488 (1992), *rev allowed* 316 Or 142 (1993), the defendant was stopped for a traffic offense and the officer observed indicia of intoxication. He asked the defendant to do a number of field sobriety tests, some of which he had difficulty performing. The officer told the defendant that he had failed the tests and that he was stopping them. He then asked the defendant the same three questions asked by Wilcox in this case. After the defendant responded to the questions, he was arrested and advised of his *Miranda* rights. We concluded that, as in *Scott*, those questions sought answers on the central issue in the case and that they were not field sobriety tests. In discussing whether the defendant could have been confused about whether the challenged questions were field sobriety tests, we said that a " 'clear break' should be provided by police to distinguish field sobriety tests from subsequent investigatory questions, so that motorists do not believe that they are required to *respond* to the latter." 117 Or App at 103. (Emphasis in original.) In that case, we did not address whether there had been a clear break. Rather, we held that, because the officer did not give the defendant "*Miranda*-like" warnings before asking the questions, his responses to those questions should have been suppressed.[2]

---

[2] The state asks us to reconsider our holding in *State v. Lawrence, supra*, that the completion of field sobriety tests creates compelling circumstances requiring

Our decision in *State v. Harrison*, 119 Or App 391, 851 P2d 611 (1993), also involved similar circumstances. In that case, the officer approached the defendant's parked car when he saw him slumped over the steering wheel. The officer asked the defendant some preliminary questions, then advised him of his *Miranda* rights. He then asked him to perform some field sobriety tests. Before administering the tests, he told the defendant that if he refused to take the tests, his refusal could be admitted against him in a court. While conducting the field sobriety tests, the officer asked the defendant a number of questions that were unrelated to the tests. Among the questions that he asked *during* the tests were how the defendant would rate his level of intoxication, whether he could feel the effects of the alcohol and whether he thought that he was driving under the influence. We concluded that, because there was no "clear break" between the field sobriety tests and the challenged questions, it would be easy for a person to be confused about whether a refusal to answer the questions would be admissible in court. Accordingly, we held that the trial court properly suppressed the defendant's answers to those questions.

■      Under our holdings in *Scott, Lawrence,* and *Harrison*,[3] the critical inquiry in determining whether to suppress a defendant's statements is whether, under the particular circumstances, the person reasonably could have believed that the question asked was part of a field sobriety test. We conclude that under the circumstances here, defendant could not reasonably have believed that the challenged questions were a part of a field sobriety test.[4]

---

*Miranda*-like warnings. 117 Or App at 104. The state argues that that holding is inconsistent with our holding in *State v. Schaffer*, 114 Or App 328, 332, 835 P2d 134 (1992), that "a request to perform field sobriety tests does not create inherently compelling circumstances for *Miranda* purposes, as a matter of law." It is unnecessary to address that question, however, because here *Miranda*-like warnings preceded the officer's questions.

[3] We note that *State v. Lawrence, supra,* and *State v. Harrison, supra,* were decided after the trial court's ruling in this case.

[4] The dissent argues that we are bound by the trial court's finding that defendant reasonably could have believed that the questions about his level of intoxication were part of a field sobriety test. That issue, however, involves questions of fact *and* law. We are bound by the trial court's findings of fact, but we are not

First, at the beginning of this encounter, Wilcox advised defendant of his *Miranda* rights. Defendant was told:

> "[Y]ou have the right to remain silent, anything you say can and will be used against you in a court of law, you have the right to speak to an attorney, have him present with you while you are being questioned * * * and if you do give a statement, you can stop talking at any time you wish."

Defendant was asked if he understood those rights, and he said that he did. Wilcox then told him that she was going to ask him to perform some field sobriety tests, which she then described. Each of the tests that she described involved physical and recitation exercises. She told him that if he refused to perform those tests, the refusal could be used against him in court. Defendant responded that he knew that. She then had defendant perform each of the sobriety tests that she had described at the beginning. Before each test, she explained how it was conducted and referred to it as a "test." She also demonstrated several of the tests. Immediately before describing the last field sobriety test, the finger-to-nose test, Wilcox told defendant that there was "one more test" and that this was the "last one." After defendant had completed that test she said to him, "Let me ask you a question." She then asked him about his intoxication level and the effects of the alcohol on him.

We conclude that, under these circumstances, the requisite "clear break" separated the field sobriety tests from the investigatory questions.[5] Defendant was advised at the outset of the encounter of his *Miranda* rights and of the consequences of refusing to take the field sobriety tests. He told the officer that he understood both of those matters. The tests that the officer requested him to perform were specifically described and did not include the challenged questions. When administering the tests, Wilcox described in detail how each test was to be conducted and referred to each as a "test."

---

bound by the trial court's determination that, under those facts, as a matter of law, the field sobriety tests and the challenged questions were not sufficiently distinct.

[5] The dissent complains that we err by limiting our focus to just one part of the record. However, just the opposite is true. We emphasize that in deciding if a reasonable person would have believed that a particular question was part of the field sobriety tests, the entire circumstances of each case must be considered. Our analysis of that question here considers all of the circumstances of the encounter.

Before the final field sobriety test, defendant was told that this was the last one. We do not believe that defendant reasonably could have believed that the questions subsequently asked were part of the field sobriety tests. Defendant knew that he had a right to remain silent. By answering the questions, he voluntarily waived his *Miranda* rights. Defendant does not argue that his statements were otherwise involuntary. The trial court erred in suppressing defendant's responses to the questions asked by the officer after defendant had completed the field sobriety tests.[6]

Reversed and remanded.

**DURHAM, J. pro tempore,** dissenting.

I agree with the majority that the critical inquiry in this case is whether defendant "reasonably could have believed that the question asked was part of a field sobriety test." 127 Or App at 11. I would affirm the trial court, because the record amply supports the trial court's determination that defendant reasonably could have believed that his refusal to answer the questions would be a refusal to submit to part of a field sobriety test.

ORS 801.272 defines "field sobriety test" as

"a physical or mental test, approved by the Department of State Police by rule after consultation with the Board on Public Safety Standards and Training, that enables a police officer or trier of fact to screen for or detect probable impairment from intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance."

In determining whether the trial court erred in deciding that defendant reasonably could have believed that the officer's questions were part of such a "physical or mental test," we are bound to consider the record in the light that supports the trial court's result. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

---

[6] Because we conclude that there was a "clear break" between the completion of the field sobriety tests and the investigatory questions, and that defendant's answers were not compelled, it is not necessary to decide whether the content of defendant's statements was incriminating. *See State v. Whitehead*, 121 Or App 619, 855 P2d 1149 (1993).

In *State v. Lawrence*, 117 Or App 99, 103, 843 P2d 488 (1992), *rev allowed* 316 Or 142 (1993), we held that

> "some type of 'clear break' should be provided by police to distinguish field sobriety tests from subsequent investigatory questions, so that motorists do not believe that they are *required* to respond to the latter." (Emphasis in original.)

In concluding that there was a "clear break" here between the field sobriety test and the questions, the majority focuses on a limited portion of the record. First, the majority emphasizes that Wilcox told defendant there was "one more test," and that it was the "last one" immediately *before* describing the finger-to-nose test. Second, the majority emphasizes that Wilcox said, "Let me ask you a question," instead of describing another "test" to defendant. On the basis of those two facts, the majority concludes that defendant could not reasonably "have believed that the questions subsequently asked were part of the field sobriety tests." 127 Or App at 13.

The record, as a whole, supports the trial court's contrary conclusion. The fact that Wilcox asked defendant a question instead of describing a test is of little significance to the "clear break" analysis in this case, because Wilcox asked defendant questions throughout the entire testing process. Immediately after advising defendant that she was going to administer some field sobriety tests and that his refusal to cooperate could be used against him in court, Wilcox asked defendant questions about the amount of alcohol he had consumed, his level of education, whether he had any medical or hearing problems and whether he was taking any medication. She also interspersed test instructions with questions that arguably related to the tests and his performance on them, such as whether defendant knew his "ABC's," and whether his boots were comfortable.

We held in *State v. Harrison*, 119 Or App 391, 396, 851 P2d 611 (1993), that questions about the defendant's level of intoxication were "so closely connected to the subject matter of the tests that defendant could have reasonably believed that these questions were testing his sobriety." The same is true here. Although Wilcox told defendant *before* the finger-to-nose test that it would be the "last" test, she said nothing *after* the test to indicate that her questions were not related to the field sobriety tests, or, instead, were seeking

follow-up information to assist her in determining how well he had performed and whether she should continue with more tests. As the trial court found, there was no temporal break or delay between defendant's last attempt to touch his nose and the officer's questions about alcohol consumption. Our holding in *State v. Scott*, 111 Or App 308, 313, 826 P2d 71 (1992), is pertinent here:

> "[T]he officer's request that defendant rate his level of intoxication on a scale of 1-10 cannot properly be characterized as a field sobriety test. *See* ORS 801.272; OAR 257-25-020. Rather, it is an example of interrogation that seeks testimony on the central issue in the case. Defendant was asked to provide an answer to the officer's question after having been read his *Miranda* rights. He had also been told that refusal to submit to field sobriety tests would be used against him. Defendant could have believed that refusing to rate his level of intoxication would constitute a refusal to submit to appropriate tests. That was not the case.
>
> "Defendant's response to the question about his level of intoxication should have been suppressed."

The trial court suppressed the statements on the basis of *State v. Scott, supra.* Although *Scott* does not control this case, because it does not address the requirement of a "clear break," it is instructive. The principle underlying *Scott* is preservation of the right against compelled self-incrimination. *State v. Whitehead*, 121 Or App 619, 623, 855 P2d 1149 (1993). As in *State v. Scott, supra,* the record amply supports the trial court's finding that the officer's questions reasonably would lead defendant to believe that the questions about defendant's level of intoxication were part of a field sobriety test. The court properly suppressed defendant's responses, because the questions infringe his right against compelled self-incrimination. The trial court applied the correct analysis to the facts that it found. I would affirm the judgment.

I respectfully dissent.