Argued and submitted February 28, reversed and remanded for new trial September 13, 1995, state's petition for review and Prickett's petition for review allowed January 23, 1996 (322 Or 489)

# STATE OF OREGON,
*Respondent,*

*v.*

# MATTHEW RAYMOND PRICKETT,
*Appellant.*

(93CR-2105; CA A82870)

902 P2d 621

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

### RIGGS, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII), a class A misdemeanor. ORS 813.010. The primary issue is whether the rule announced in *State v. Rudder*, 133 Or App 174, 889 P2d 1367 (1995), now pending on reconsideration, applies to DUII prosecutions. We hold that it does not.

*Rudder* presented the question of whether district courts had retained jurisdiction over cases involving class A misdemeanors after the 1993 legislature amended ORS 161.635 to authorize a $5,000 maximum fine for class A misdemeanors, but did not amend ORS 46.040, under which the jurisdictional limit for district courts was $3,000. In *Rudder*, we held that, as a result of ORS 161.635 (1993), district courts no longer had jurisdiction over class A misdemeanors, because the $5,000 penalty assessable for those offenses exceeded the courts' $3,000 jurisdictional cap.

In response to *Rudder*, the 1995 legislature amended ORS 46.040 to remove that statute's $3,000 limitation and to retroactively grant to district courts jurisdiction over all class A misdemeanors heard by those courts on or after August 18, 1993. *Rudder* is presently under reconsideration to consider the effect of the legislative change and to decide whether the legislature can validate past district court actions by retroactively conferring jurisdiction on those courts.

In this case, defendant argues that the trial court erred in denying his motion to dismiss, because under defendant's reading of *Rudder*, the district court lacked jurisdiction to preside over any and all class A misdemeanors, including his DUII charge. Defendant is incorrect. *Rudder* analyzed the discrepancy between the versions of ORS 46.040 and ORS 161.635 that were then in effect, and held that the general reference to "all misdemeanors," ORS 51.050(1), ORS 161.635, was limited by the specific jurisdictional amount specified in ORS 46.040. 133 Or App at 177. It did not discuss the effect of any other statutes, such as ORS 153.565, that specifically confer jurisdiction on district courts.

ORS 153.565(1) provides:

> "*A circuit or district court has concurrent jurisdiction of all state traffic offenses*, except that the circuit court has exclusive jurisdiction of the trial of criminally negligent homicide and of felonies." (Emphasis supplied.)

ORS 153.500(9) provides, in part:

> " 'State traffic offense' means *a violation of any provision of law for which a criminal* or traffic infraction *penalty is provided in the Oregon Vehicle Code*[.]" (Emphasis supplied.)

The Oregon Vehicle Code is contained in ORS chapters 801 to 822, and thus includes ORS chapter 813, which criminalizes DUII. ORS 801.010(1). DUII is alternatively described as an "offense," ORS 813.010(4), or a "major traffic offense," ORS 153.500(5)(b). The criminal penalties for DUII include both the imprisonment and fines that are applicable to all Class A misdemeanors, ORS 161.635, *and* the penalties that are specific to DUII. *See* ORS 813.020.

■ In short, although DUII comes within the general category of class A misdemeanors, its more specific classification is that of a "traffic offense." The legislature has expressly provided that district courts and circuit courts have concurrent jurisdiction over such offenses. ORS 153.565(1). Accordingly, DUII cases are unaffected by our holding in *Rudder*. The trial court did not err in denying defendant's motion to dismiss for lack of jurisdiction.

Defendant also assigns error to the trial court's admission into evidence of a police officer's testimony about questions and answers that revealed defendant's opinion of his level of intoxication on the night when he was stopped for DUII. It is undisputed that, after defendant was stopped, he was asked to perform and did perform field sobriety tests. He was not advised of the consequences of refusing to perform those tests. After defendant had completed the tests, the officer asked him to rate his level of intoxication, on a scale of one to ten (ten being "falling down drunk"). Defendant rated himself between two and three. Defendant was then asked whether he thought he was in good enough condition to drive, and defendant responded that he felt good enough to drive home, but that he probably would not drive after that.

The trial court ruled that, because defendant had not been advised of the consequences of refusing to take the field sobriety tests, he had not been coerced to take the tests, and, because there was no coercion, his statements were voluntarily made, so he did not need to be informed of his *Miranda* rights and his answers to the officer's questions were admissible in the DUII proceeding. Defendant challenges those rulings on the basis of *State v. Lawrence*, 117 Or App 99, 843 P2d 488 (1992), *aff'd by an equally divided court* 320 Or 107 (1994). In *Lawrence*, we held that answers to questions such as "rate your sobriety on a scale of 1 to 10" and "has your drinking affected your driving" were inadmissible under the circumstances of that case, because such questions could have been understood as being part of the field sobriety tests and because they were "likely to elicit self-incriminating testimonial evidence." *Id.* at 104; *see also State v. Harrison*, 119 Or App 391, 396, 851 P2d 611 (1993); *State v. Scott*, 111 Or App 308, 313, 826 P2d 71 (1992).

The state argues that *Lawrence* and *Scott* disapproved of such questions *only* because drivers who had been informed of the consequences of refusing to take field sobriety tests might mistakenly assume that they were required to respond to the questions. According to the state, this case is not governed by the rule announced in those cases, because here defendant was *not* informed of the consequences of refusal, so he could not have felt coerced to take the field sobriety tests and, therefore, he could not have believed that he was required to answer the officer's subsequent questions.

Under the state's approach, if an officer asks a driver to perform field sobriety tests and fails to inform the driver of the consequences of refusing that request, but the driver nonetheless performs, the officer may then ask questions that elicit incriminating responses and may use those responses against the driver in a DUII proceeding. In essence, the state would have us hold that an officer may violate the statutory requirement that, before field sobriety tests are administered, "the person requested to take the tests *shall* be informed of the consequences of refusing," ORS 813.135 (emphasis supplied), and that the officer may then obtain both test results and incriminating testimonial evidence and use that evidence against the driver.

Arguably, the combined holdings of a patchwork of previous cases support the holding that the state seeks in this case. *See State v. Trenary*, 316 Or 172, 850 P2d 356 (1993) (an officer's failure to advise a driver of the consequences of refusing to perform field sobriety tests does not require suppression of the test results, provided that the tests were otherwise voluntarily performed); *State v. Dill*, 127 Or App 6, 12, 870 P2d 851 (1994) (if drivers are informed of the consequences of refusing field sobriety tests and then are asked questions that elicit incriminating responses, those responses are admissible, so long as there is a "clear break" between the test performance and the questioning); *State v. Schaffer*, 114 Or App 328, 332-33, 835 P2d 134 (1992) (requesting driver to perform field sobriety tests does not create "compelling" circumstances); *State v. Egger*, 24 Or App 927, 930-32, 547 P2d 643, *rev den* (1976) (stopping a driver for DUII and administering field sobriety tests does not create a "custodial" setting, thus no *Miranda* warnings are necessary, because there is no danger of compulsory self-incrimination).

However, the law relating to Oregon's Implied Consent Law has undergone substantial change in the past year. First, in *State v. Nagel*, 320 Or 24, 31, 36, 880 P2d 451 (1994), the Supreme Court held that the administration of field sobriety tests is a search, under both the Oregon Constitution and the United States Constitution, but ruled that under the facts of that case, the search was reasonable, because before administering tests, the officer had acquired probable cause to believe that the defendant was driving under the influence of intoxicants, and an exception to the warrant requirement (exigent circumstances, based on the dissipation of the defendant's blood-alcohol content) applied. The court's analysis was limited to searches, and did not discuss whether asking a driver to step out of his or her car to perform field sobriety tests constituted a seizure, or created a quasi-custodial setting in which a driver would feel compelled to answer the officer's questions, such that even apparent consent could not be deemed "voluntary."

Then, in *State v. Fish*, 321 Or 48, 60, 893 P2d 1023 (1995), the court held that using a defendant's refusal to perform field sobriety tests as evidence in a DUII prosecution violates Article I, section 12, of the Oregon Constitution

(right against compelled self-incrimination), because both a *refusal* to perform tests *and* the *performance* of certain field sobriety tests is "testimonial," and a driver is compelled to choose one of those two options under the implied consent statutes, ORS 813.135 and ORS 813.136. The defendant in *Fish* was informed of that "choice," and the court did not address what effect, if any, an officer's failure to provide that information would have on the element of compulsion that gives rise to a constitutional violation.

■     Despite the language in *Nagel* and *Fish*, we conclude that *Trenary* remains authoritative and that field sobriety *test results* are still admissible even when an officer fails to give the requisite statutory advice under ORS 813.135. Therefore, the only issue is whether the post-test questions in this case were asked under circumstances that rendered involuntary the answers given by defendant.

■     We have held that, "once the [field sobriety] tests have concluded, the setting becomes 'compelling' under the standard enunciated in *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990), and the officer must give *Miranda*-like warnings" before asking post-test questions. *Lawrence*, 117 Or App at 104. Under *Lawrence*, defendant's unadvised responses to the officer's questions cannot be deemed voluntary. Accordingly, their use in this DUII prosecution violated his right against compelled self-incrimination. *See Fish*, 321 Or at 53 ("[T]o receive protection under the self-incrimination clause of Article I, section 12, a person's statement or conduct must (1) be 'testimonial' evidence, (2) be 'compelled,' and (3) be evidence that could be used against the person in a criminal prosecution.").

Reversed and remanded for a new trial.