Argued and submitted September 9, 1996, decision of the Court of Appeals affirmed in part and reversed in part, judgment of the district court affirmed January 16, 1997

## STATE OF OREGON,
*Respondent on Review /*
*Petitioner on Review,*

*v.*

## MATTHEW RAYMOND PRICKETT,
*Petitioner on Review /*
*Respondent on Review.*

(DC 93CR-2105; CA A82870; SC S42692, S42853)

930 P2d 221

Hari Nam S. Khalsa, Deputy Public Defender, Salem, argued the cause for petitioner on review/respondent on review Matthew Raymond Prickett. With him on the briefs were Sally L. Avera, Public Defender, and Eric M. Cumfer, Deputy Public Defender.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review/petitioner on review State of Oregon. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber and Durham, Justices.

GRABER, J.

## GRABER, J.

This is a criminal case in which defendant was convicted of driving under the influence of intoxicants (DUII). The issue before us is whether questioning that occurs after the completion by a defendant of lawful field sobriety tests is "compelling," as a matter of law, under Article I, section 12, of the Oregon Constitution, thereby requiring that such questioning always be preceded by *Miranda*-like warnings. We answer that question "no."

On October 1, 1993, at about 10:30 p.m., an Oregon State Police trooper stopped defendant's car for two traffic infractions: failure to have a license plate light and failure to yield. The stop occurred on Highway 42 in Coos County. Defendant does not challenge the validity of that stop.

As soon as he approached defendant's car, the trooper detected the odor of alcohol on defendant's breath and saw that defendant's eyes were watery and bloodshot. The trooper asked defendant to perform field sobriety tests,[1] but did not inform him of the consequences of refusal, as set out in ORS 813.135 and 813.136. Defendant complied with the request and took four field sobriety tests. Although he performed well on two tests, he performed poorly on a balance test and failed the horizontal gaze nystagmus test. Defendant does not dispute that the trooper had at least a reasonable suspicion to justify an investigation for the offense of DUII,[2] and he does not challenge the validity or general admissibility of the four tests performed.

---

[1] "Field sobriety test" is defined in ORS 801.272 as

"a physical or mental test * * * that enables a police officer or trier of fact to screen for or detect probable impairment from intoxicating liquor, a controlled substance or a combination of intoxicating liquor and a controlled substance."

[2] ORS 813.010 provides in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

After defendant completed the field sobriety tests, the trooper asked him two questions, neither of which was preceded by *Miranda*-like warnings. Those questions were not themselves a field sobriety test. The trooper first asked defendant to rate his level of intoxication on a scale of one (completely sober) to ten (drunk). Defendant rated himself a two or three. The trooper then asked defendant whether he thought that he was in good enough condition to drive. Defendant said that he felt good enough to drive home but probably would not drive after that. The trooper then arrested defendant for DUII.[3] A breath test administered at the jail showed that defendant's blood alcohol content was .09 percent.

On January 5, 1994, a jury convicted defendant of DUII, a Class A misdemeanor. Defendant appealed his conviction, raising two issues. First, he argued that the district court lacked jurisdiction over his case because, due to a statutory amendment in 1993, district courts could not hear cases involving Class A misdemeanors in which the maximum fine exceeded $3,000. The maximum possible fine for Class A misdemeanors at the time of trial was $5,000. The Court of Appeals held that the district court had jurisdiction, because ORS 153.565(1) gave such courts jurisdiction of all state traffic offenses, and DUII is a traffic offense. *State v. Prickett*, 136 Or App 559, 562, 902 P2d 621 (1995).

Second, defendant challenged the admissibility of his responses to the two questions that the trooper asked after completion of the field sobriety tests. The Court of Appeals held that, once a driver completes the requested field sobriety tests, the setting becomes "compelling" as a matter of law so that an officer always must give *Miranda*-like warnings before asking any questions. *Id.* at 565. Because the trooper did not give defendant *Miranda*-like warnings before asking questions, the use of defendant's responses in the DUII prosecution violated his state constitutional right against compelled self-incrimination. *Ibid.* Accordingly, the

---

[3] The trial court concluded in oral rulings that defendant consented to take the field sobriety tests, that he answered the trooper's subsequent questions voluntarily, and that defendant was not in custody until his arrest, which occurred after he answered the questions. Defendant does not challenge any of those conclusions, and the record supports them.

Court of Appeals reversed the conviction and remanded the case for a new trial. *Ibid.*

Defendant petitioned this court to review the jurisdictional issue, and the state petitioned this court to review the substantive issue. We allowed review of both issues.

■ We can dispose of the jurisdictional issue with little discussion. This court recently held in *State v. Webb,* 324 Or 380, 382, 927 P2d 79 (1996), that district courts did not lose jurisdiction over Class A misdemeanors when the legislature in 1993 raised the maximum fines for such crimes from $2,500 to $5,000. After noting that justice courts had jurisdiction over all misdemeanors under ORS 51.050(1), *id.* at 385, the court concluded that district courts likewise had jurisdiction over all misdemeanors because, under ORS 46.040 (1993), they had the same criminal and quasi-criminal jurisdiction as justice courts, *id.* at 393. Based on that holding in *Webb,* we conclude that the district court had jurisdiction over defendant Prickett's DUII prosecution.

■ As to the substantive issue, the state challenges the Court of Appeals' rule of law that *Miranda*-like warnings always are required before questioning an individual after completion of a field sobriety test. The state then argues that, in this case, defendant voluntarily performed the field sobriety tests, that neither his performance of the tests nor the surrounding circumstances, taken as a whole, converted this ordinary traffic stop into a "compelling" situation, and that *Miranda*-like warnings therefore were not required. Accordingly, the state concludes, the trial court properly refused to suppress defendant's responses to the questions that were asked after he completed the field sobriety tests.

By contrast, defendant argues that a "compelling" circumstance exists whenever any field sobriety tests are given and that *Miranda*-like warnings therefore are required before any subsequent "testimonial" questioning takes place. Defendant then argues that his responses should be suppressed, because he did not receive such warnings before being questioned.

■ Defendant bases his argument (as the Court of Appeals based its holding) solely on Article I, section 12, of

the Oregon Constitution.[4] This court has held that Article I, section 12, requires that a police officer give *Miranda*-like warnings, before questioning, to a person who is in "full custody" or in a "setting which judges would and officers should recognize to be compelling." *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990) (citing *State v. Magee,* 304 Or 261, 265, 744 P2d 250 (1987)) (internal quotation marks omitted).[5]

■      This court has held that Article I, section 12, does not require an officer to give *Miranda*-like warnings before questioning a person who is stopped for a traffic infraction, because that person is neither in custody nor under compulsion in the constitutional sense. *State v. Vu,* 307 Or 419, 425, 770 P2d 577 (1989). Based on that holding, it is clear that, *before* administering a field sobriety test, an officer could question a properly stopped person, in the way that the trooper did in this case, without first giving *Miranda*-like warnings.

The inquiry here is whether such questioning ever may *follow* a lawful field sobriety test in the absence of *Miranda*-like warnings. When it answered "no," the Court of Appeals relied primarily on its earlier decision in *State v. Lawrence,* 117 Or App 99, 103-05, 843 P2d 488 (1992), *aff'd by an equally divided court* 320 Or 107, 880 P2d 431 (1994). *Prickett,* 136 Or App at 565.

The defendant in *Lawrence* was convicted of DUII. On appeal, he argued that the trial court had erred by denying his motion to suppress responses to questions that the arresting officer asked after the defendant completed field sobriety tests. The defendant argued that "some type of 'clear break' should be provided by police to distinguish field sobriety tests from subsequent investigatory questions, so that motorists do not believe that they are *required* to respond to the latter." 117 Or App at 103 (emphasis in original). The Court of Appeals agreed. The court reasoned that the defendant could have believed that a question about his level of

---

[4] Article I, section 12, of the Oregon Constitution provides: "No person shall * * * be compelled in any criminal prosecution to testify against himself."

[5] Because the result in this case would be the same under federal law, *see Berkemer v. McCarty,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984), we need not consider the possible application of 1996 Ballot Measure 40.

intoxication was a part of the field sobriety tests and that he was required to answer it, because the officer had warned him of the consequences of refusing to take field sobriety tests. *Id.* at 103-04. The Court of Appeals then held *as a matter of law* "that, once the tests have concluded, the setting becomes 'compelling' under the standard enunciated in *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990), and the officer must give *Miranda*-like warnings before asking more questions." *Id.* at 104 (footnote omitted). Because the officer had failed to give *Miranda*-like warnings to the defendant, the court held, the defendant's statements should have been suppressed. *Ibid.* The court reversed his conviction. *Id.* at 105.

■　The Court of Appeals made an analytical error in *Lawrence*, which it perpetuated in the present case, by transforming a fact-specific answer into an answer as a matter of law. In some cases, questioning that follows the completion of field sobriety tests may occur in a setting that is "compelling" for state constitutional purposes. However, completing a field sobriety test, *without more*, does not create a "compelling" setting as a matter of state constitutional law. Rather, in determining whether a statement was "compelled" in the state constitutional sense, a court must look at all the circumstances in which the purportedly compelled statement was made. *See State v. Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991) (considering factors relevant to the inquiry into whether questioning occurred in compelling circumstances); *Smith*, 310 Or at 7-8 (same).[6]

■　With the foregoing principles in mind, we turn to the facts of this case. Defendant was stopped on a public highway as a result of his having committed two traffic infractions. Only one trooper was present. The stop as a whole, and the questions, were brief. There is nothing in the record to show any heightened level of activity by the trooper, such as a drawn gun or a loud tone of voice, beyond a routine traffic stop. Defendant was not coerced or threatened in any way. He was not under arrest and could have refused to answer the questions. He had taken field sobriety tests voluntarily, and he answered the trooper's questions voluntarily. *See*

---

[6] We do not suggest that the *result* in *Lawrence* was wrong, but its facts are not the same as the facts in the present case.

*Carlson*, 311 Or at 205 (discussing factors making the setting noncompelling); *Smith*, 310 Or at 7-8 (same). We conclude that defendant was not in "full custody," *id.* at 7, when he answered the trooper's questions and that the setting was not "compelling" in the state constitutional sense. Therefore, *Miranda*-like warnings were not required.

Contrary to a suggestion by the Court of Appeals, 136 Or App at 564-65, that conclusion is consistent with the holdings in two recent cases dealing with field sobriety tests: *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), and *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995). Each of those cases dealt with a different issue than the one now before us.

In *Nagel*, an officer administered field sobriety tests to a defendant after warning him of the statutory consequences of refusing to perform the tests. The defendant was arrested for DUII after completing the tests. 320 Or at 26-27. The trial court denied the defendant's motion to suppress all evidence derived from the field sobriety tests. *Id.* at 27-28. This court concluded that the administration of field sobriety tests was a search under both Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the federal Constitution, but that the warrantless search was reasonable because of probable cause plus exigent circumstances. *Id.* at 28-37.

Even though the administration of field sobriety tests is a search, not every kind of search in every situation renders the setting "compelling" in the constitutional sense, as a matter of law. All the facts of each case still must be considered. In this case, the trial court found that defendant consented to the tests (search) voluntarily and that defendant answered the trooper's questions voluntarily. The record supports those findings.

In *Fish*, the defendant refused to perform field sobriety tests and was arrested after being warned that his refusal could be used as evidence against him in court. 321 Or at 50. The trial court granted the defendant's motion to suppress the evidence of his refusal to take the tests, in part because admission of that evidence violated the defendant's right against self-incrimination under Article I, section 12, of the Oregon Constitution. *Id.* at 50. This court agreed, holding

that evidence of the defendant's refusal was compelled "testimonial" evidence and that Article I, section 12, precludes such evidence from being admitted against the defendant in a criminal proceeding for DUII. *Id.* at 63.

This case differs materially from *Fish.* As noted above, defendant here *voluntarily took* four field sobriety tests, rather than refusing to take them, and he does not challenge the propriety of the admission in evidence of the results of any of the field sobriety tests that he took. *Fish* did not hold that *every* field sobriety test compels testimonial evidence as a matter of law. Moreover, nothing in *Fish* suggests that the completion of a proper field sobriety test necessarily creates a "compelling" setting, so that all investigatory activity thereafter must be preceded by *Miranda*-like warnings. The compulsion in *Fish* did not derive from the *setting* of the DUII stop but, rather, from the fact that all the choices available to the stopped driver required him to give potentially incriminating testimonial evidence. No parallel compulsion is present here.

In summary, we hold that the administration of lawful field sobriety tests does not, without more, create a "compelling" setting as a matter of law, thereby requiring that *Miranda*-like warnings always precede questioning after the completion of the tests. We therefore reverse the contrary decision of the Court of Appeals.[7]

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed.

---

[7] The trial court examined all the circumstances and concluded in oral rulings that defendant acted voluntarily and that, when he answered the trooper's questions, defendant was not in custody, was not coerced, and was not in a compelling setting. That being so, affirmance of the trial court's judgment, rather than remand for further consideration, is the appropriate disposition.