Argued and submitted July 18, 1996, reversed and remanded February 12, petition for review denied April 15, 1997 (325 Or 247)

STATE OF OREGON,
*Appellant,*

*v.*

JOHN ERNEST MILLER,
*Respondent.*

(95-12834; CA A90849)

932 P2d 112

Paula Johnson Lawrence, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

James Patrick McHugh, Jr. argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

The sole issue in this case is whether defendant was entitled to receive *Miranda*-like warnings[1] before being asked to perform field sobriety tests in a DUII investigation. The trial judge ruled that defendant *was* so entitled, and entered an order suppressing evidence of defendant's statements, field sobriety tests and breath test. The state appeals, ORS 138.060(3), and we reverse.

At approximately 1:00 a.m. on June 29, 1995, an officer in a marked patrol car saw defendant leave a tavern and drive his motorcycle out of the parking lot. As defendant began traveling along the public road, his motorcycle made a loud scraping noise. Defendant pulled to the side of the road and stopped. The officer drove up behind defendant, got out and asked defendant if he needed assistance. Defendant responded that he did not know what was wrong with his motorcycle. When defendant took off his helmet, the officer smelled the odor of alcohol. The officer asked defendant for his driver's license, which defendant produced.

The officer asked defendant if he had had anything to drink, and defendant stated that he had consumed three "rum and cokes" at a bar. The officer then asked defendant to rate the effects of the alcohol, on a scale of zero to 10, "with zero being extremely sober and ten being extremely drunk." Defendant rated himself as a "four." He stated that he could "feel the alcohol and knew it was time" to leave the bar. The officer observed that defendant's eyes were bloodshot and glassy.

Following that initial contact,[2] the officer returned to his patrol car and turned on his "stage one emergency lights to the rear," because he had determined that he would

---

[1] *See Miranda v. Arizona*, 384 US 436, 479, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (person in custody must be advised that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires").

[2] The trial court did not suppress any of the statements made by defendant during his initial contact with the officer, and defendant does not challenge that decision.

be conducting a DUII investigation. The officer returned to defendant, advised him that he was under investigation for driving under the influence of intoxicants and told him that he was not free to leave.

The officer then asked defendant to perform field sobriety tests and defendant agreed. The officer testified that he had not placed defendant under arrest at that point but that, in his opinion, he (the officer) had probable cause to arrest defendant for driving under the influence of intoxicants, ORS 813.010. The officer did not give *Miranda*-like warnings and did not advise defendant of the consequences of refusing to perform the field sobriety tests.[3]

Based on defendant's field sobriety test performance, he was arrested for DUII, transported to the jail, given the opportunity to make a phone call, advised of his *Miranda* rights and then asked to take a breath test. The test results showed a blood alcohol content of .110%.

Defendant filed a pretrial motion to suppress all observations, statements, tests, admissions and fruits thereof on the grounds that the officer lacked probable cause before administering the field sobriety tests, defendant's submission to those tests was not voluntary and he had been "compelled" to take them without having first been given *Miranda* warnings, allegedly in violation of Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. He sought suppression of the breath test as "derivative evidence from the unlawfully obtained field sobriety tests."

The state responded to defendant's motion to suppress by arguing, *inter alia*, that the officer had probable cause to believe that defendant was driving while intoxicated before the officer administered the field sobriety tests and the

---

[3] *See* ORS 813.135 ("Before [field sobriety] tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests[.]"); ORS 813.136 (refusal or failure to submit to field sobriety tests "is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants"); *State v. Trenary*, 316 Or 172, 178, 850 P2d 356 (1993) (field sobriety test results need not be suppressed even if officer failed to inform driver of the consequences of refusal, because that uninformed driver "has not been harmed in any legal sense.")

dissipating alcohol created exigent circumstances, so a search warrant was not required. It also argued that defendant had consented freely and voluntarily to the search and, for that additional reason, no warrant was necessary.

The trial court granted defendant's motion, based on the following conclusions:

> "Prior to the time the officer activated his overhead lights, the officer was engaged in 'mere conversation.' After the activation of the lights and the statement to the defendant that he was no longer free to leave, the contact became a 'stop.'

> "At the time the officer activated his emergency lights, re-contacted the defendant, told the defendant he was no longer free to leave and he was being investigated for Driving Under the Influence of Intoxicants, the defendant was in custody and the officer was obligated to warn defendant of his rights per *Miranda*."

The court ordered the suppression of all "statements of the defendant following the [officer's] statement advising defendant he was not free to leave." It suppressed the field sobriety tests and breath test as "fruits of the poisonous tree."

The narrow issue on appeal is whether the trial court erred in holding that *Miranda*-like warnings were required immediately after the officer told defendant that he was being investigated for DUII and was not free to leave.[4] In *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990), the court wrote:

---

[4] Because that issue has been answered adversely to defendant under the federal constitution, we limit our analysis to the Oregon Constitution. "Federal law requires *Miranda* warnings when a person is subjected to 'custodial interrogation.'" *State v. Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991), *quoting Miranda*, 384 US at 444. In *Berkemer v. McCarty*, 468 US 420, 441-42, 104 S Ct 3138, 82 L Ed 2d 317 (1984), the Court held that a motorist detained by a police officer during a routine traffic stop, questioned and subjected to field sobriety tests, was not "in custody" for purposes of *Miranda. See also State v. Roberti*, 298 Or 412, 693 P2d 27 (1984).

This appeal does not present the question of whether the officer had probable cause before asking defendant to perform the field sobriety tests. *See State v. Nagel*, 320 Or 24, 880 P2d 451 (1994) (administration of field sobriety tests is search that must be justified by, for example, probable cause plus exigent circumstances).

"In determining whether *Miranda*-like warnings were required by the Oregon Constitution, we must assess the extent to which defendant was 'in custody.' In Oregon, a defendant who is in 'full custody' must be given *Miranda*-like warnings prior to questioning. *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987). In addition, such warnings may be required in circumstances that, although they do not rise to the level of full custody, create a 'setting which judges would and officers should recognize to be "compelling." ' " (Footnote omitted.)

In *Smith*, the defendant was questioned in a noncustodial facility, was not told that he was a suspect, was free to end the meeting, and the findings indicated no coercion that would have compelled or pressured the defendant to answer the questions. The court held that those circumstances "did not rise to the level of custody requiring *Miranda*-like warnings[.]" 310 Or at 8.

Although defendant in the present case was *not* free to leave, it is well established that a "routine traffic stop," including one for the investigation of DUII, is not an intrinsically coercive setting that would compel an individual to incriminate himself or herself, *i.e.*, a field sobriety test is not a form of custodial interrogation, even though a motorist so stopped could be arrested for attempting to elude or some other offense, if the motorist tried to leave. *State v. Schaffer*, 114 Or App 328, 332, 835 P2d 134 (1992); *see also State v. Fish*, 321 Or 48, 85, 893 P2d 1023 (1995) (Graber, J., concurring in part and dissenting in part) (valid stop to administer field sobriety tests is neither custody nor a setting that is "compelling"); *State v. Whitehead*, 121 Or App 619, 623, 855 P2d 1149 (1993) (driver's performance of field tests generally does not violate rights against compelled self-incrimination); *State v. Hackworth*, 69 Or App 358, 363, 685 P2d 480 (1984) ("[T]he fact that a motorist may temporarily feel that he is not 'free to leave' does not render him 'in custody' for purposes of *Miranda*."). Also, although defendant in the present case was a suspect, unlike the defendant in *Smith*, 310 Or at 8, "the fact that police question a person as a suspect in a crime 'does not inherently create a "compelling" setting for Oregon constitutional purposes.' " *State v. Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991) (quoting *Smith*, 310 Or at 11).

Finally, defendant points to no facts that rendered the circumstances of his contact with the officer coercive, and nothing in the record indicates that defendant was pressured to answer questions or perform the field sobriety tests. We conclude that defendant's statements and test performance were voluntary, *i.e.*, "the product of an essentially free and unconstrained choice," *State v. Vu*, 307 Or 419, 425, 770 P2d 577 (1989);[5] *see also State v. Prickett*, 324 Or 489, 494, 497, 930 P2d 221 (1997) (administration of field sobriety tests, alone, does not create "compelling" setting as matter of law).

Reversed and remanded.

---

[5] Although "[t]he statutory scheme of ORS 813.135 and 813.136 effectively eliminated [the] defendant's ability to invoke his right against compelled self-incrimination" in *Fish*, 321 Or at 60, defendant in the present case was not similarly "compelled" to testify against himself because *no warnings under that statutory scheme were given* and, as noted above, no other form of compulsion was present. Simply put, defendant agreed to take the tests, uncoerced by any threats or promises.