Argued and submitted July 3, affirmed October 2, 2002

# STATE OF OREGON,
## *Appellant,*

*v.*

# PATRICK REED McMILLAN,
## *Respondent.*

## C0012-54860; A115156

55 P3d 537

David J. Amesbury, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Linda Wicks, Certified Law Student.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The trial court granted defendant's pretrial motion to suppress statements that he made before receiving *Miranda* warnings. The state appeals from the order granting that motion. We affirm.

We set out the historical facts consistently with the trial court's ruling. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Officers Brian Duddy and David Steele worked together as part of a prostitution investigation. Steele would wear street clothes, drive an unmarked car, and pose as a customer. Duddy would be in uniform, drive a marked police car, and make the stop after Steele had contacted a suspect. On August 24, 2000, Steele spotted a woman whom he believed to be a prostitute. Before he could speak with her, defendant stopped his truck and picked her up. Steele followed defendant's truck. He saw defendant drive to two automatic teller machines, remove cash from the second machine, get back in the truck, and resume driving. Steele explained that shortly afterwards "[the woman's] head disappeared down where I, I couldn't see her head any longer. And I asked Officer Duddy to pull in and make the stop."

Duddy turned on his lights and siren. When he did so, the woman's head reappeared and defendant pulled over. Both Steele and Duddy stopped their cars and approached defendant's truck. Duddy, who was in uniform, spoke with defendant. He asked him for his license and also asked what was going on. Duddy then spoke with the woman. He asked her to get out of the truck and took her to a nearby location where he read her her *Miranda* rights and then questioned her. She told Duddy that she was a prostitute and that she was going to receive $20 from defendant after she had sex with him. Duddy placed her under arrest for prostitution.

While Duddy was questioning the woman, Steele contacted defendant. Steele walked up to the driver's side of the truck. Defendant remained in the truck when Steele first approached it. Defendant then got out of the truck but remained in Steele's presence, who stood close by throughout

the stop. Steele asked for and received defendant's identification. Defendant wanted to use his cell phone to call the truck's owner, but Steele prevented him from doing so first by taking his cell phone and then by telling him that he could not make the phone call "until we resolve this prostitution issue."

When Steele first approached defendant, defendant said, "I don't know why you stopped me. I didn't do anything. I did nothing." In response, Steele explained what he had seen and why he pulled defendant over. Defendant then asked, "[W]hat's going to happen, am I going to jail?" Steele replied, "Well, as soon as Officer Duddy is finished with the prostitute, then he's going to come back and make the decision as to whether or not you're going to jail or getting a citation or what we're going to do with this particular case." Steele then told defendant "that [he] had watched [defendant] go to the bank machine, watched [the woman's] head go down in his lap, and that she had said she was giving him a blow job for 20 bucks." When confronted with that statement, defendant said, "[Y]eah, you're right." Steele then asked defendant how much he paid, and defendant said that "he hadn't given her any money yet but he was going to." At that point, Steele placed defendant under arrest and advised him of his *Miranda* rights.[1]

Before trial, defendant moved to suppress the inculpatory statements that he had made during the stop. He argued that the officers subjected him to custodial interrogation before advising him of his *Miranda* rights. The trial court granted defendant's motion to suppress. On appeal, the state argues that no *Miranda* warnings were required because defendant was neither in custody nor in compelling circumstances.[2]

---

[1] The record does not disclose whether defendant made any statements after being advised of his *Miranda* rights, and the question whether those statements, if any, are admissible is not before us. *See State v. Dinsmore*, 182 Or App 505, 515-16, 49 P3d 830 (2002) (discussing that question).

[2] The state does not argue that Steele's statements to defendant, which prompted the admission, "yeah, you're right," did not constitute interrogation. *See State v. Cunningham*, 179 Or App 498, 501, 40 P3d 535, *rev den*, 334 Or 327 (2002) (defining interrogation for the purposes of Article I, section 12).

■ Under Article I, section 12, of the Oregon Constitution, *Miranda* warnings are required when a defendant is either in full custody or in compelling circumstances. *State v. Magee,* 304 Or 261, 264-65, 744 P2d 250 (1987). The question whether a person is in custody or whether the circumstances are sufficiently compelling to require *Miranda* warnings is a question of law based on the totality of the circumstances. *State v. Stevens,* 311 Or 119, 135-36, 806 P2d 92 (1991). In reviewing that question, we accept the trial court's explicit and implicit factual findings as binding as long as there is evidence in the record to support them. *State v. Rocha-Ramos,* 161 Or App 306, 309, 985 P2d 217 (1999). On review, we determine whether the trial court applied the proper legal principles to those findings to reach a correct legal conclusion. *Ball,* 250 Or at 487.

■ In this case, defendant had not been arrested at the time the statements in question were made and was not in "full custody." *See State v. Warner,* 181 Or App 622, 628, 47 P3d 497 (2002). The question accordingly is whether the circumstances were compelling. On that point, we note that traffic stops ordinarily are not sufficiently compelling to require *Miranda* warnings. *State v. Prickett,* 324 Or 489, 494, 930 P2d 221 (1997). Traffic stops are typically relatively brief, and the public nature of the stop does not make a suspect feel as though he or she is "completely at the mercy of the police." *State v. Hackworth,* 69 Or App 358, 362, 685 P2d 480 (1984). Similarly, stopping a person to investigate a crime does not usually result in compelling circumstances. *State v. Nevel,* 126 Or App 270, 276, 868 P2d 1338 (1994). That is true even if the person being questioned by the police does not feel free to go. *Id.*

■■ Some stops, however, may present sufficiently compelling circumstances that *Miranda* warnings are required. *Compare State v. Fish,* 321 Or 48, 893 P2d 1023 (1995), *with Prickett,* 324 Or at 495-97.[3] Whether they do is a fact-specific

---

[3] In *Fish,* the defendant refused to perform field sobriety tests and was arrested after being warned that his refusal could be used as evidence against him in court. 321 Or at 50. The court held that evidence of the defendant's refusal was compelled "testimonial" evidence that could not be admitted against him in the absence of *Miranda* warnings. *Id.* at 63. In *Prickett,* the defendant had not been advised of the consequences of refusing to perform field sobriety tests, and the

question. *Prickett*, 324 Or at 495. In determining whether compelling circumstances exist, the courts have considered the number of officers and police cars on the scene, the use of lights and sirens in the stop, the use of physical force or confinement during questioning, the duration of the stop, and the demeanor of the investigating officer. *Nevel*, 126 Or App at 276-77. The familiarity of the surroundings also matters; it makes a difference whether the questioning takes place on a person's porch or in the police station. *Compare State v. Wood*, 112 Or App 61, 63-64, 827 P2d 924, *rev den*, 313 Or 355 (1992), *with Magee*, 304 Or at 266. Although an officer's unarticulated suspicions do not result in compelling circumstances, *State v. Clem*, 136 Or App 37, 41-42, 900 P2d 1064 (1995), expressly confronting a suspect with evidence of probable cause to arrest may make the circumstances sufficiently compelling to require *Miranda* warnings. *See State v. Werowinski*, 179 Or App 522, 40 P3d 545 (2002); *State v. Rose*, 109 Or App 378, 819 P2d 757 (1991).

In this case, we conclude that the circumstances were sufficiently compelling that *Miranda* warnings were required. On the one hand, the stop was not prolonged and it occurred in a public place. On the other hand, Duddy stopped defendant using the lights and siren on a marked police car, defendant was not free to leave, and Steele supervised defendant closely during the stop. Those factors, however, are present in many stops, and they are insufficient standing alone to make the circumstances of this stop sufficiently compelling to require *Miranda* warnings. What tips the balance in this case is that Steele told defendant that, "as soon as Officer Duddy is finished with the prostitute, then he's going to come back and make a decision as to whether or not you're going to jail." Steele then confronted defendant with what he had seen and the passenger's statement that she and defendant had agreed to sex for money. In addition, although the stop occurred in a public place, Steele prevented defendant from calling anyone on his cell phone "until we resolve this prostitution issue." Taken together, those facts created a compelling situation because defendant reasonably understood from what Steele had told him that the officers could

court held that the circumstances of that stop were not sufficiently compelling to require *Miranda* warnings. 324 Or at 491, 497.

exert control over his means of communication and movement, that they had probable cause to arrest him, and that Duddy would be deciding whether defendant should be arrested and taken to jail.

Our holdings in *Rose* and *Werowinski* inform our decision here. In *Rose*, the officer stopped the driver for driving erratically and then noticed a gun holster on the seat of the car. 109 Or App at 380. After the officer asked the defendant, who was a passenger in the car, if there was a gun in the car, she admitted that there was and gave it to the officer. *Id*. The officer then ordered the defendant out of the car and, after she admitted that she had no concealed weapon permit, asked her whether she knew that it was illegal to carry a concealed weapon in a car. *Id*. The defendant argued that *Miranda* warnings were required after the officer ordered her out of her car and asked her if she knew that it was illegal to carry a concealed weapon in a vehicle. *Id*. at 381. We agreed, holding that the defendant, at that point, was in a "compelling setting." *Id*.

In *Werowinski*, the officers questioned the defendant following a tavern fight. 179 Or App at 524-25. The defendant was placed in the back of a police car for 10 to 15 minutes while the officer interviewed other people and then was questioned by the officer while the door of the police car was open but the officer was blocking the defendant's exit. *Id*. The officer confronted the defendant with the statements of other eyewitnesses that implicated him in the crime of assault and advised him of his *Miranda* rights only after the defendant conceded that the eyewitnesses were correct. *Id*. at 525-26.

We held that the detention was not a full custodial arrest because the restraint was reasonable in light of the circumstances. *Id*. at 529. However, we also held that the setting was compelling, based on the fact that the defendant was held in the back of the police car for 10 to 15 minutes and that the police confronted the defendant with probable cause to arrest him before questioning. *Id*. at 532. We noted that the direction from police that the defendant stay in the back of the police car was a "mirror image" of the situation in *Rose*, where the defendant was ordered out of her car. *Id*. We reasoned that the totality of the circumstances, including the

facts that the defendant's physical access was blocked and that he was confronted with statements by witnesses that tended to incriminate him, created a compelling setting. *Id.*

In both *Rose* and *Werowinski*, after the police restricted the defendant's freedom to leave, the officers confronted the defendant with evidence of sufficient probable cause to support an immediate arrest. In this case, defendant was not free to leave. Steele supervised defendant closely, refused to let him make phone calls until they had resolved the prostitution charges, told him that Duddy would decide when he was "finished with the prostitute" whether he would be going to jail, and then confronted him with both circumstantial and testimonial evidence that alerted him to the fact that police had sufficient probable cause to arrest him for prostitution. Steele, in effect, told defendant that he either would be or could be placed under arrest. Consistently with *Rose* and *Werowinski*, we hold that the circumstances of this stop were sufficiently compelling to require *Miranda* warnings.

Affirmed.