Submitted September 27, 2012, affirmed February 12, petition for review denied June 26, 2014 (355 Or 703)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## OSCAR ALLAN ADAME,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI092355; A146636

323 P3d 282

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Edmonds, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Defendant appeals his conviction of one count of driving while under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of his motion to suppress. Defendant argues that the trial court erred in admitting evidence related to his performance of verbal field sobriety tests because those tests were testimonial and compelled in violation of the self-incrimination clause of Article I, section 12, of the Oregon Constitution.[1] For the following reasons, we affirm.

We state the facts consistently with the trial court's findings of historical fact, provided that they are supported by constitutionally sufficient evidence in the record, and we assess independently whether those findings support the trial court's legal conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the trial court did not make express findings, we will presume that the court found facts consistent with its ultimate conclusion. *State v. Stevens*, 311 Or 119, 127, 806 P2d 92 (1991).

Officer Kirk was on patrol when he saw defendant driving a car at approximately 1:30 a.m. Kirk decided to randomly run defendant's license plate through dispatch, which then reported that defendant's registration tags were expired. At that point, Kirk turned on his overhead lights

---

[1] Defendant also argues that the trial court erred in admitting any evidence derived from the stop because the officer's random check of the car's license plate violated the privileges and immunities clause of Article I, section 20, of the Oregon Constitution. The state asserts that defendant did not preserve his argument at trial and defendant contends that the alleged error is reviewable as plain error. *See* ORAP 5.45(1) (stating that appellate courts have discretion to correct an error of law apparent on the record). To constitute plain error, the claimed error must meet three criteria, one of which is that the error is "apparent, meaning the legal point must be obvious, that is, not reasonably in dispute." *State v. Martin*, 221 Or App 78, 81, 188 P3d 432, *rev den*, 345 Or 418 (2008) (internal quotation marks omitted). In *State v. Davis*, 237 Or App 351, 360, 239 P3d 1002 (2010), *aff'd by an equally divided court*, 353 Or 166, 295 P3d 617 (2013), the lead opinion concluded that, even though the officer testified that he was not aware of a policy or standard on how to conduct random license plate searches, the officer's other testimony on his decision to run plates "was the result of a confluence of training, time, and opportunity" and "was not a haphazard or *ad hoc* decision." We conclude that the legal point—whether the officer's check of defendant's license plate was not guided by any permissible policy—is reasonably in dispute. Accordingly, we decline to reach the merits of defendant's privileges and immunities argument.

and pulled defendant's car over. When he approached defendant's driver's side window and explained to defendant why he had been stopped, Kirk began to suspect that defendant may be impaired by alcohol. Kirk noticed that, while he was talking to defendant, defendant's eyes were watery and that an odor of alcohol was coming from the car, but he could not tell whether the odor was coming from defendant or his passenger. Kirk asked defendant if he had been drinking, and defendant replied that his passenger had been drinking but that he had not.

Kirk then asked defendant if he would mind stepping out of his car to perform some field sobriety tests, and defendant agreed. Kirk first administered the horizontal gaze nystagmus (HGN) test, an eye examination developed to detect intoxication. The officer observed nystagmus, which is rapid involuntary eye movement, and six out of the six possible "clues" indicating intoxication. Afterward, Kirk asked defendant to perform the walk-and-turn test, but defendant refused to perform that test because he said that he had a bad back.

Shortly thereafter, Officer Majetich arrived to take over the investigation. Majetich was working a special shift for the sole purpose of detecting and apprehending DUII drivers. Majetich approached defendant, who was leaning against the rear of his car, and asked him why he would not perform the field sobriety tests. Defendant told Majetich that he would not perform the tests because he had been working all day and was tired. Majetich noticed that defendant had bloodshot and watery eyes, slurred speech, and an odor of alcohol emitting from his breath. Majetich explained to defendant that the field sobriety tests were not physically demanding and asked again if he would be willing to perform the tests. In response, defendant stated, "[J]ust arrest me."

Believing that he had probable cause to arrest defendant for a DUII, Majetich read the field sobriety test admonishment card to defendant, which stated:

> "I am asking you to perform some field sobriety tests. These tests are *non-verbal and non-testimonial*. They will not require you to make any statements against yourself or reveal your thoughts or beliefs or state of mind.

> "The tests I will be asking you to complete *include a horizontal gaze nystagmus test, the nine-step walk and turn test, and the one-leg stand test.*"

(Emphasis added.) At trial, Majetich testified that, typically, the officer conducting a DUII stop would (and he did) briefly explain and demonstrate the tests identified in the admonishment card. The admonishment card goes on to state:

> "If you refuse to do these tests, the test refusal can be used against you in a court of law."

After he read the admonishment card in its entirety and demonstrated the field sobriety tests that defendant was requested to perform, Majetich asked defendant if he would perform the "walk-and-turn" and "one-leg stand" tests. Defendant again refused to perform those tests.

Majetich immediately asked defendant if he "would be willing to perform some tests that [do] not involve anything physical[,]" and defendant agreed to perform some verbal tests. Majetich requested that defendant recite the alphabet from A to Z without singing, and defendant recited the alphabet without any errors. During the alphabet test, however, Majetich noticed that defendant's speech was slurred and continued to detect an odor of alcohol emitting from his breath. Next, Majetich asked defendant to count from 65 to 98 out loud, and defendant failed that test by counting out of sequence and stopping at the number 90 instead of 98. After defendant failed the counting test, Majetich arrested defendant for DUII and, once defendant was taken to the police department, advised him of his *Miranda* rights. The next day, defendant was charged with one count of DUII.

Defendant moved to suppress evidence from his *verbal* field sobriety tests (alphabet and counting), arguing, among other things, that those field sobriety tests were testimonial and that, when he performed those tests, he was put in a "compelling circumstance" without having been given *Miranda* warnings in violation of the self-incrimination clause of Article I, section 12.[2] During the hearing, defendant's argument focused on when he should have been given

---

[2] Article I, section 12, provides, in part, "No person shall be * * * compelled in any criminal prosecution to testify against himself."

*Miranda* warnings. The trial court, however, determined that *Miranda* warnings were unnecessary before the officer had requested defendant to perform the verbal field sobriety tests and framed the issue as follows:

> "I think the question comes down to can there have been reasonable confusion by the defendant about, if he refused to take the verbal test, that refusal could be used against him and did that play into his decision to take the test."

The court requested that defendant provide supplemental authority on that issue, and defendant filed a supplemental memorandum, contending that, once the officer told defendant that a refusal to take the field sobriety tests could be used against him at trial, he could not be asked to complete the verbal field sobriety tests because that request violated his right to be free from self-incrimination, relying on *State v. Fish*, 321 Or 48, 53, 893 P2d 1023 (1995). The trial court denied the motion to suppress, but did not make express findings of fact related to the events that occurred after Majetich's arrival.

Following the denial of his motion to suppress, defendant entered a conditional guilty plea, ORS 135.335(3), reserving the right to appeal the denial of his motion to suppress. In its amended judgment, the trial court convicted defendant of one count of DUII based on his guilty plea. The court later imposed, among other things, a probation sentence for 36 months and a lifetime revocation of his driving privileges.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress, reprising his argument that the evidence related to his performance of the verbal field sobriety tests should be suppressed because those tests were compelled in violation of the self-incrimination clause of Article I, section 12. To receive protection of the self-incrimination clause, the person's statements or conduct must be (1) "testimonial evidence," (2) "compelled," and (3) "evidence that could be used against the person in a criminal prosecution." *Fish*, 321 Or at 53 (internal quotation marks omitted). Defendant primarily relies on *Fish* in support of his argument that the field sobriety tests at issue in this case were both testimonial and compelled. To provide

context, we begin with an overview of the statutory framework concerning field sobriety tests before we discuss *Fish* in some detail.

Under ORS 813.135, a driver is deemed to have consented to submit to field sobriety tests,[3] but ORS 813.135 provides that,

> "[b]efore the tests are administered, the person requested to take the tests shall be informed of the *consequences* of refusing to take or failing to submit to the tests under ORS 813.136."

(Emphasis added.) The consequences of refusing to take the field sobriety tests are set out in ORS 813.136 and are as follows:

> "If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

Unlike some other implied consent statutes, ORS 813.136 does not require the officer to make any specific statement concerning the consequences of refusal or to recite the statute verbatim. *State v. Cabanilla*, 351 Or 622, 636, 273 P3d 125 (2012). The legislative purpose of informing a person of the consequences of refusing to take a field sobriety test "was not to create a right, but to bring further pressure on suspected intoxicated drivers to take the field sobriety tests." *State v. Trenary*, 316 Or 172, 177, 850 P2d 356 (1993). However, ORS 813.135 and ORS 813.136, taken together, create a limited implied exclusionary rule that, "if the driver *refuses* the tests and no information concerning the consequences of refusing was given, evidence of refusal is not admissible." *Id.* at 178 (emphasis in original). The statutes do not provide for any exclusion of evidence if a driver takes the field sobriety tests without being informed of the consequences because, in that instance, "the goal of the

---

[3] Field sobriety tests are described in OAR 257-025-0020(1) and include the HGN, the walk-and-turn, the one-leg stand, modified finger-to-nose, the finger count, the alphabet, counting, the internal clock, and the Romberg balance tests.

statute—that suspected DUII drivers perform field sobriety tests—has been achieved." *Id.* Therefore, "[t]he statute is directed at drivers who refuse to take the test, not at drivers who do take the test[.]" *Id.* at 177.

Having discussed the relevant statutory framework governing field sobriety tests, we turn to the Supreme Court's decision in *Fish.* In that case, the defendant refused to perform field sobriety tests and challenged the admission of his refusal to perform the field sobriety tests on constitutional grounds, arguing that the field sobriety tests would have violated his right against compelled self-incrimination. 321 Or at 50. In a divided court, the Supreme Court majority held that evidence of the defendant's refusal to perform certain field sobriety tests could not be admitted against him. *Id.* at 60. In reaching its conclusion, the Supreme Court examined whether ORS 813.136—which, as stated earlier, provides that, if a person refuses or fails to submit to field sobriety tests, evidence of the refusal is admissible—compels an individual to provide testimonial evidence. *Id.* at 57-60.

The court noted that ORS 813.136 provides the defendant with a "choice" between (1) performing the field sobriety tests or (2) admitting into evidence the defendant's refusal to perform the tests. *Id.* at 58. The court acknowledged that, although the state gives an individual a choice, the option of a choice "does not necessarily mean that the individual is not compelled to testify against himself or herself." *Id.* at 57. For that reason, the court went on to examine the nature of the options to determine whether each choice was a course of conduct that the state could not compel and, offered together, resulted in compulsion. *Id.* at 58.

Specifically, the court considered whether each of the two choices resulted in testimonial evidence, which includes verbal statements or conduct that communicate the individual's beliefs, knowledge, or state of mind. *Id.* at 56, 58-59. The Supreme Court first concluded that the second choice—admission of a defendant's refusal—is testimonial evidence because evidence of a person's refusal or failure to perform field sobriety tests "inferentially may communicate the person's belief" or state of mind as to his or her

intoxicated state. *Id.* at 56. Second, the court determined that the first choice—performing the field sobriety tests—is also testimonial evidence. *Id.* at 59. The court reasoned that *some* of the field sobriety tests are testimonial because they require an individual to communicate the individual's beliefs or state of mind to the police:

> "Some of the field sobriety tests involve verbal statements that communicate information regarding an individual's state of mind. Many of the field sobriety tests authorized by OAR 257-25-020(1) draw upon the individual's memory, perception, and ability to communicate, *i.e.*, his or her testimonial capacity. For example, the tests involve counting, OAR 257-25-020(1)(b), (1)(f), (1)(h); answering questions relating to the individual's residence and date of birth, OAR 257-25-020(1)(d)(B); estimating a period of time, OAR 257-25-020(1)(i); and reciting the alphabet, OAR 257-25-020(1)(g). There can be no doubt that those aspects of the field sobriety tests require the individual to communicate information to the police about the individual's beliefs, knowledge, or state of mind. Accordingly, we conclude that at least those aspects of the field sobriety tests are clearly 'testimonial' under Article I, section 12, of the Oregon Constitution."

*Id.* at 60. The court ultimately held that, "[b]ecause a refusal to perform field sobriety tests and the performance of such tests are both 'testimonial,'" the defendant was only given the choice as to *how* he would incriminate himself by providing either form of testimony, and that "such a 'choice' constituted compulsion under Article I, section 12." *Id.*

Since *Fish*, we have repeatedly held that the Supreme Court's decision did not require that all field sobriety tests be considered testimonial and therefore subject to the protection of Article I, section 12. *See, e.g., State v. Rohrs,* 157 Or App 494, 498, 970 P2d 262 (1998), *aff'd,* 333 Or 397, 40 P3d 505 (2002); *State v. Nielsen,* 147 Or App 294, 936 P2d 374, *rev den,* 326 Or 68 (1997). In fact, we have explained that, as a general rule, field sobriety tests "that produce physical evidence of an individual's intoxication," without requiring an individual to reveal his or her thoughts, beliefs, or state of mind, are not testimonial. *Nielsen,* 147 Or App at 306. Specifically, we determined that the heel-to-toe walk test and the physical aspects of the one-leg stand and

modified Romberg tests are nontestimonial and, therefore, can be compelled by the state. *Id.* at 308-09.

Here, defendant argues that this case is similar to the facts in *Fish*. In defendant's view, based on this record, the only inference that the trial court could have made is that defendant believed that the admonishment, which informed him that his refusal to perform certain field sobriety tests could be admissible against him, extended to the alphabet and counting field sobriety tests because he was asked to perform those verbal tests immediately after Majetich read defendant the admonishment card. Defendant contends that, because he believed that his refusal to perform the alphabet and counting tests would have been admissible against him, he was given the "choice" between performing those tests or having his refusal admitted against him, both of which are testimonial and, under *Fish*, constitutes compulsion.

Before addressing defendant's arguments, we emphasize that the admonishment card that Majetich read to defendant explained that only the three requested field sobriety tests (HGN, walk-and-turn, and one-leg stand) were nonverbal and nontestimonial and that defendant's refusal or failure to perform those tests could be used against him in any criminal or civil action or proceeding, as provided by ORS 813.135. It is true that, once defendant refused to perform those tests, Majetich immediately asked defendant to perform "some tests that [do] not involve *anything physical*"— the alphabet or counting tests—without indicating whether those tests were testimonial or whether the admonishment did not apply to those tests. (Emphasis added.) However, we reject defendant's contention that the only inference that could be made is that he understood the admonishment to also relate to the verbal field sobriety tests.

Whether the admonishment was understood by defendant to relate to the verbal field sobriety tests is an issue of fact, not an issue of law. *See State v. Cuneo*, 148 Or App 71, 74, 939 P2d 84, *rev den*, 326 Or 82 (1997) (concluding that the issue of whether the subsequent statutory warnings provided in ORS 813.135 made a defendant's previous agreement to perform the field sobriety tests ineffective was a question of fact, not law). We are unpersuaded by

defendant's reliance on *State v. Lawrence*, 117 Or App 99, 103, 843 P2d 488 (1992), *aff'd by an equally divided court*, 320 Or 107, 880 P2d 431 (1994), a case that predates *Fish*, in support of his argument that, as a matter of law, there must be a "clear break" between the officer's admonishment and his request to perform the alphabet and counting tests for the trial court to find that the defendant understood that the admonishment did not apply to the verbal field sobriety tests. In *Lawrence*, the defendant performed field sobriety tests and then the officer asked the defendant to rate his level of intoxication and if he could feel the effects of the alcohol he had consumed. 117 Or App at 101. This court held that, as a matter of law, once the field sobriety tests had concluded, the setting became compelling and, therefore, "the officer must give *Miranda*-like warnings before asking more questions." *Id.* at 104. *Lawrence*, however, was later abrogated by *State v. Prickett*, 324 Or 489, 495, 930 P2d 221 (1997), which determined that this court in *Lawrence* made an "analytical error" "by transforming a fact-specific answer into an answer as a matter of law" and, ultimately, the Supreme Court held that "completing a field sobriety test, without more, does not create a 'compelling' setting as a matter of state constitutional law." (Emphasis omitted.) As such, defendant's reliance on *Lawrence* is misplaced.

Turning to the factual issue presented, although the trial court did not make explicit findings on the record (or in its order) regarding whether defendant voluntarily performed the verbal tests or whether the admonishment had any effect on defendant's decision to perform the verbal tests, we presume that the court found facts consistent with its ultimate conclusion. *Stevens*, 311 Or at 127. At the hearing, the trial court understood that the main issue concerning the suppression of the verbal field sobriety tests was whether "there [was] reasonable confusion by the defendant about, if he refused to take the verbal test, that refusal could be used against him and did that play into his decision to take the test[,]" and the court, after receiving supplemental memoranda on the issue, ultimately denied defendant's motion to suppress. The record indicates that, on three separate occasions during this traffic stop, defendant refused to perform some of the physical field sobriety

tests—twice before he received the admonishment and once after he received the admonishment—but defendant agreed to perform the verbal field sobriety tests. In concluding that defendant's responses to the verbal field sobriety test did not need to be suppressed, the trial court implicitly found that defendant understood that the admonishment related only to the physical field sobriety tests specifically identified in the admonishment card and that the admonishment did not affect defendant's decision to perform the verbal field sobriety tests. Unlike in *Fish*, the admonishment identified, and the officer demonstrated, the nontestimonial field sobriety tests for which a refusal could be used against defendant, and there is sufficient evidence to support a finding that defendant in this case understood that he could refuse to perform the verbal field sobriety tests that were later requested and that his refusal could not be used against him. Therefore, we conclude that defendant was not in a situation where he was compelled to provide testimonial evidence. Accordingly, the trial court did not err in denying defendant's motion to suppress the results of the alphabet and counting tests.

Affirmed.